# EXHIBIT 1

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

I.    **CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

<u>TIMESHARES DIRECT, INC.</u>
Plaintiff                                                        Case # _____
                                                                    Judge _____

vs.

<u>WATSTEIN TEREPKA, LLC a/k/a WATSTEIN TEREPKA LLP</u>
Defendant

II.    **AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☒  $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☐ over $100,000.00

III.    **TYPE OF CASE**      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐ Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☐ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☒ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.      REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.       NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

  2

**VI.      IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.     HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☐ yes
    ☒ no

**IX.      DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Jeremy Leonard Kahn        Fla. Bar # 105277
       Attorney or party               (Bar # if attorney)

Jeremy Leonard Kahn          07/14/2025
  (type or print name)            Date

Filing # 227209922 E-Filed 07/14/2025 04:04:20 PM

**IN THE COUNTY COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, STATE OF FLORIDA**

TIMESHARES DIRECT, INC.,

    Plaintiff,

vs.                                CASE NO.:

WATSTEIN TEREPKA, LLC a/k/a
WATSTEIN TEREPKA LLP,

    Defendant.

_____/

## <u>VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

Plaintiff Timeshares Direct, Inc. ("TDI") sues Defendant Watstein Terepka, LLC a/k/a Wastein Terepka LLP ("Watstein") for declaratory and injunctive relief, and alleges as follows.

### NATURE OF ACTION

1.    This an action to declare an illegal arbitration provision unenforceable and to enjoin any arbitration pursuant to the illegal and unenforceable arbitration provision. TDI engaged Watstein to provide legal services in Florida. The engagement agreement contains an arbitration provision that plainly violates the Rules Regulating the Florda Bar. After a fee dispute arose between the parties, Watstein threatened and then eventually filed an arbitration against TDI. TDI seeks a declaratory judgment that the arbitration provision is unenforceable and an injunction enjoining Watstein from pursuing the illegal arbitration.

2.    This is also an action to declare the amounts billed by Watstein as unreasonable and that TDI is not liable for the overcharges by Watstein.

1

## PARTIES, JURISDICTION, AND VENUE

3.     Plaintiff TDI is a Florida corporation with its principal place of business in Orange County, Florida.

4.     Although it inaccurately holds itself out as a limited liability partnership, Defendant Watstein is a Georgia limited liability company with its principal place of business in Fulton County, Georgia. Watstein holds itself out as a "Nationwide Litigation Boutique" and it maintains an office in Miami-Dade County at 218 Northwest 24th Street, 3rd Floor, Miami, FL 33127.

5.     The Court has subject-matter jurisdiction over this action because TDI seeks equitable relief and the underlying amount in controversy exceeds $8,000 but does not exceed $50,000, exclusive of interest and costs.

6.     Venue is proper in this Court because the causes of action asserted in this complaint accrued in Miami-Dade County. Venue is also proper because Defendant Watstein maintains an office and has an agent or other representative in Miami-Dade County.

## FACTUAL BACKGROUND

7.     After TDI was sued in the U.S. District Court for the Middle District of Florida, Watstein directly solicited TDI to defend it.

8.     On November 8, 2024, TDI executed an engagement agreement to retain Watstein to defend it in the Middle District of Florida action.

9.     An accurate copy of the engagement agreement is attached as Exhibit A.

2

10.     Watstein's founding partner, Ryan Watstein, Esq., executed the engagement agreement on behalf of Watstein.

11.     Mr. Watstein is an attorney licensed in Florida and regulated by the Florida Bar, and thus is subject to the Rules Regulating the Florida Bar.

12.     Mr. Watstein lists his and his firm's address with the Florida Bar as Watstein Terepka LLP, 218 NW 24th St Fl 3, Miami, FL 33127-4324.

13.     The engagement agreement contains an arbitration provision that purports to apply to any dispute between TDI and Watstein arising out of or in any way relating to the engagement agreement or any services provided by Watstein.

14.     Rule 4-1.5(i) of the Rules Regulating the Florida Bar provides:

A lawyer must not make an agreement with a potential client prospectively providing for mandatory arbitration of fee disputes without first advising that person in writing that the potential client should consider obtaining independent legal advice as to the advisability of entering into an agreement containing such mandatory arbitration provisions.   A lawyer shall not make an agreement containing such mandatory arbitration provisions unless the agreement contains the following language in bold print:

> **NOTICE: This agreement contains provisions requiring arbitration of fee disputes.  Before you sign this agreement you should consider consulting with another lawyer about the advisability of making an agreement with mandatory arbitration requirements.  Arbitration proceedings are ways to resolve disputes without use of the court system.  By entering into agreements that require arbitration as the way to resolve fee disputes, you give up (waive) your right to go to court to resolve those disputes by a judge or jury.   These are important rights that should not be given up without careful consideration.**

15.     The arbitration provision in the engagement agreement violates Rule

3

4-1.5(i) of the Rules Regulating the Florida Bar because it does not contain the required notice at all, let alone in bold print.

16.    The arbitration agreement is further unconscionable because it purports to deprive TDI of any right to discovery and purports to require arbitration in Atlanta, Georgia even though TDI is not located in Georgia and the engagement concerned litigation entirely in Florida. It also unconscionably purports to impose Georgia law to any dispute as a method of allowing Watstein to attempt to evade the requirements of the Rules Regulating the Florida Bar.

17.    Contrary to the terms of the engagement agreement, Watstein did not submit billing statements with detailed reports describing the services performed and time incurred on a monthly basis.

18.    Instead, Watstein submitted billing statements on a haphazard basis, with the invoice for work in December 2024 sent on February 25 2025; the invoice for January 2025 work sent on April 15, 2025; the invoice for February 2025 work sent on April 1, 2025; and the invoice for March 2025 work sent on April 10, 2025.

19.    This haphazard invoicing schedule not only violated the terms of the engagement agreement, but it also prevented TDI from examining Watstein's billing in a timely manner that would allow TDI to determine other issues with Watstein's billing practices in time to raise the issues with Watstein to prevent them from recurring or obtain new counsel if necessary.

20.    These issues included high-rate partners billing for tasks that should have been assigned to junior associates or paralegals who billed at a lower rate. For

example, correspondence regarding scheduling and procedural matters were often billed by high-level partners at rates of $700–$850 per hour.

21. High-rate partners would also unreasonably bill numerous "0.1" – "0.3" time entries for administrative or clerical acts. They would also separate out multiple "0.1" entries as discrete tasks when they should have been consolidated into one "0.1" entry.

22. There were also numerous instances in which multiple attorneys unnecessarily and unreasonably billed time for the same or closely related work product—such as the preparation, revision, and review of pleadings, discovery, and routine correspondence.

23. Watstein attorneys also billed an unreasonable and inordinate amount of time on numerous tasks. For example, almost an hour of time was billed to review a docket with eight entries and draft an unopposed motion for extension of time to answer the complaint.

24. Again, had Watstein submitted invoices to TDI on a monthly basis as promised, these issues could have been raised and addressed early in the representation. But Watstein's delayed and haphazard invoicing deprived TDI of the opportunity to meaningfully review, question, or dispute charges or to raise any concerns contemporaneously and course-correct on scope or staffing where warranted

25. After a dispute over these fees owed arose between the parties, Watstein threatened TDI that it would initiate an arbitration against it.

26.     On June 27, 2025, through its counsel, TDI sent Watstein a letter stating that that TDI objected to any arbitration because, *inter alia*, the arbitration provision in the engagement agreement violates the Rules Regulating the Florida Bar and because it is unconscionable.

27.     Three minutes later, Mr. Watstein responded by email. His email, in full, stated: "You clearly know nothing about this area. We'll send you the arbitration demand once it's filed. Have a nice weekend."

28.     On July 8, 2025, Watstein followed through with its threat to attempt to enforce the illegal and unenforceable arbitration provision by serving TDI with an arbitration demand that Watstein filed with the American Arbitration Association.

29.     An accurate copy of the arbitration demand (without attachments) is attached as Exhibit B.

30.     Although Watstein knew that TDI was represented by counsel, Watstein served TDI with the arbitration demand by serving TDI's registered agent Jeffrey Frantz in Miami, Florida by email rather than TDI's counsel.

31.     All conditions precedent to this action have been performed, waived, or are excused.

32.     TDI has retained legal counsel and is obligated to pay the undersigned counsel a reasonable fee for the services rendered in this action.

## COUNT I – DECLARATORY JUDGMENT

33.     TDI incorporates by reference the allegations in paragraphs 1 through

32 of this complaint as if fully set forth herein.

34.     An actual and present controversy exists between the parties concerning the enforceability of the arbitration provision in the engagement agreement.

35.     TDI contends that the arbitration provision is unenforceable and is in doubt about its rights under the engagement agreement.

36.     TDI therefore seeks a declaration that the arbitration provision is unenforceable.

37.     TDI also seeks an injunction enjoining Watstein from enforcing or attempting to enforce the arbitration provision as TDI has a clear legal right to such an injunction, TDI has no adequate remedy at law, and TDI would be irreparably harmed absent such injunctive relief.

38.     Additionally, the harm to TDI of allowing Watstein to enforce the arbitration provision outweighs any potential harm to Watstein caused by enjoining its enforcement of an illegal and unenforceable arbitration provision.

39.     The requested injunction would not disserve the public interest, and instead would serve the public interest, because the arbitration provision violates the Rules Regulating the Florida Bar and is thus against public policy and also because it is in the public interest to not allow attorneys practicing in Florida to flout the Rules Regulating the Florida Bar.

WHEREFORE, Plaintiff TDI respectfully requests that the Court enter judgment against Defendant Watstein granting the following relief:

a.   A declaration that the arbitration provision in the engagement agreement is void and unenforceable.

b.   An injunction enjoining Watstein from enforcing or attempting to enforce the arbitration provision.

c.   An award of TDI's costs in prosecuting this action;

d.   An award of TDI's reasonable attorneys' fees to the extent allowed by contract or any applicable law; and

e.   Any other relief that the Court deems just and proper.

**COUNT II – DECLARATORY JUDGMENT**

40.   TDI incorporates by reference the allegations in paragraphs 1 through 32 of this complaint as if fully set forth herein.

41.   An actual and present controversy exists between the parties concerning the reasonableness and propriety of the fees Watstein charged TDI and the amounts owed by TDI.

42.   TDI contends that the fees are unreasonable and that its payments to Watstein to date are a reasonable fee for the services performed.

43.   TDI therefore seeks a declaration that it is not liable for further fees to Watstein.

WHEREFORE, Plaintiff TDI respectfully requests that the Court enter judgment against Defendant Watstein granting the following relief:

a.   A declaration that Watstein's fees are unreasonable and excessive and that TDI has no further liability for such fees beyond the amounts it has

already paid.

b.   An award of TDI's costs in prosecuting this action;

c.   An award of TDI's reasonable attorneys' fees to the extent allowed by

contract or any applicable law; and

d.   Any other relief that the Court deems just and proper.

Dated: July 14, 2025                    Respectfully submitted,

_/s/ Jeremy L. Kahn_
Jeremy L. Kahn
Florida Bar No. 105277
jkahn@bfvlaw.com
kmoore@bfvlaw.com
Berman Fink Van Horn P.C.
3475 Piedmont Road, NE, Suite 1640
Atlanta, Georgia 30305
Telephone:  404-261-7711
Facsimile:  404-233-1943

*Counsel for Plaintiff*
*Timeshares Direct, Inc.*

9

## VERIFICATION

Under penalties of perjury, I declare that I have read the foregoing Verified Complaint for Declaratory and Injunctive Relief and that the facts stated in it are true to the best of my knowledge and belief.

Executed on: July 14, 2025

Jeffrey W. Frantz

President

Timeshares Direct, Inc.

**IN THE COUNTY COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, STATE OF FLORIDA**

TIMESHARES DIRECT, INC.,

     Plaintiff,

vs.                                CASE NO. 2025-117079-GE-05

WATSTEIN TEREPKA, LLC a/k/a
WATSTEIN TEREPKA LLP,

     Defendant.

_____/

**NOTICE OF FILING OF EXHIBITS TO VERIFIED
<u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>**

     Plaintiff Timeshares Direct, Inc. files the attached Exhibits A and B to its

Verified Complaint for Declaratory and Injunctive Relief, which were inadvertently

not included when the Complaint was filed.

Dated: July 17, 2025              Respectfully submitted,

                                 */s/ Jeremy L. Kahn*
                                 Jeremy L. Kahn
                                 Florida Bar No. 105277
                                 jkahn@bfvlaw.com
                                 kmoore@bfvlaw.com
                                 Berman Fink Van Horn P.C.
                                 3475 Piedmont Road, NE, Suite 1640
                                 Atlanta, Georgia 30305
                                 Telephone:  404-261-7711
                                 Facsimile:  404-233-1943

                                 *Counsel for Plaintiff*
                                 *Timeshares Direct, Inc.*

1

# EXHIBIT A



Ryan D. Watstein<br>
(404) 782-0695<br>
ryan@wtlaw.com

11/11/2024

**<u>VIA EMAIL</u>**

Timeshares Direct, Inc.
c/o Jeffrey Frantz
jfrantz@timesharesbyowner.com

Re:     Engagement Letter ("Letter") Ralph Rantowich v. Timeshares Direct, Inc., Middle District of Florida Case no. 6:24-cv-02033

Dear Jeffrey,

Thank you for providing Watstein Terepka LLP (the "Firm" or "we") with the opportunity to represent Timeshares Direct Inc. ("Company," "Client," or "you") in the matter described in the "Re" line of this letter (the "Matter"). We look forward to providing the Company with timely, cost-effective, and highly professional legal services.

Our fees are based on the time spent (recorded in one-tenth-of-an-hour increments) by the professionals performing services on the Company's behalf. Hourly rates vary by professional and are adjusted in January of each year. Our 2024 hourly rates are $275-$310 for paralegals, $435-$550 for associates, $550 to $625 for counsel, and $675-$750 for partners.

The attachment ("Attachment") to this Letter explains other charges that will be billed to you as expenses and further details the terms on which we will represent you. It also details how our invoices may be paid. Please review this Letter and the Attachment carefully, as together they represent the agreement ("Agreement") between the Company and the Firm, unless inconsistent with the Company's outside counsel guidelines, in which case the latter govern.

It is the Firm's normal practice to require a refundable retainer of $25,000 for all new clients in putative class actions, which serves as security to ensure we are paid for the work we perform. We agreed to reduce this to $10,000 based on your representation that our invoices will be timely paid. If the scope of our representation changes, we are asked to provide additional legal services, or our invoices are not timely paid per the terms of this Agreement, we reserve the right to require payment of an additional retainer. Any retainer will be held by the Firm and applied to the final invoice, except the Firm may apply all or a portion of the retainer to any invoices that are not paid when due, in which case you agree to promptly replenish the retainer. If you are current at the conclusion of the representation, the retainer will be refunded in full; otherwise, the retainer will be applied to any outstanding invoices.

---

| **Atlanta** | **Los Angeles** | **Miami** |
|:---:|:---:|:---:|
| 1055 Howell Mill Road, 8th Floor | 515 S. Flower Street, 19th Floor | 218 NW 24th Street, 3rd Floor |
| Atlanta, GA 30318 | Los Angeles, CA 90071 | Miami, FL 33127 |

 **www.wtlaw.com**     **Ryan@wtlaw.com**     **404-782-0695**

The Company and the Firm (collectively the "Parties") agree that any dispute arising out of or relating in any way to this Agreement or any services provided by the Firm shall be governed by Georgia law, without regard to rules governing conflicts of law, and settled by arbitration in accordance with the Commercial Arbitration Rules (the "Arbitration Rules") of the American Arbitration Association, including any dispute about arbitrability of any claim or other matter, such as the scope or enforceability of this arbitration provision. The Parties shall agree upon a single arbitrator to conduct the arbitration proceeding; provided, however, in the event that the Parties are unable to agree upon the arbitrator, the arbitrator shall be appointed pursuant to the provisions of the Arbitration Rules. The arbitrator shall be a practicing attorney with significant and demonstrable expertise in litigating and presiding as an arbitrator over cases involving the substantive legal areas involved in the dispute between the Parties. The Parties shall not request and the arbitrator shall not order that any discovery be taken or provided, including without limitation, depositions, interrogatories, or document requests, in connection with the arbitration proceeding. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Any arbitration conducted pursuant to this Paragraph shall take place in Atlanta, Georgia and shall be concluded within three (3) months from the date that the Arbitrator is appointed. In the event that any provision in this Paragraph is found to be unenforceable, that provision shall be severed so that the Parties 'intent to arbitrate shall survive and arbitration shall proceed without such provision.

We believe arbitration is an efficient way to resolve disputes in a confidential setting. You should note, however, that in agreeing to the foregoing arbitration provision, you are waiving any right to go to court and have a trial in front of a jury. You may also be giving up the right to proceed in a jurisdiction other than Atlanta, Georgia, and the right to conduct written discovery and take depositions that would be allowed if the dispute were proceeding in court. We cannot advise you with regard to agreeing to arbitration or waiving these significant rights, and you should consult independent counsel for any such advice.

Though we will initially be representing the Company with respect to the Matter, it is possible the Company may desire the Firm to represent it in other matters from time to time. To the extent we agree to undertake such additional representation, the Firm and the Company agree that each additional matter will be governed by the terms of the Agreement as a separate Matter, unless we agree otherwise in writing.

If you agree to these terms and conditions, please sign where indicated below and return the signed Agreement to me. Alternatively, you may indicate your consent to the Agreement with a return email indicating you intend that email to serve as your electronic signature in the space provided in the Client Signature section of this Engagement Letter. Finally, to the extent you direct us to perform work or accept work on the Matter, you consent to this Agreement regardless of whether you sign or confirm by email. We look forward to working with you.

Sincerely,

*/s/ Ryan D. Watstein*

Ryan D. Watstein

Page 3

 

 

The undersigned has authority to enter into this Agreement on behalf of the Company, has read and understood the terms stated in this Letter and the Attachment, and agrees to those terms as of the date the Firm first performed services for the Company concerning the Matter.

_____

Jeffrey Frantz, President
Timeshares Direct, inc.

Date:  _11/08/2024_____

**ATTACHMENT**
**ADDITIONAL TERMS AND CONDITIONS APPLICABLE TO ENGAGEMENT**

**Scope and Duration of Representation**

The Firm will provide the legal services reasonably required to represent Client in the Matter.  Unless we agree otherwise in writing, our engagement does not include representation of any employee, affiliate, officer, or member of Client.  An attorney-client relationship will exist between the Firm and Client for the duration of the Matter and will terminate upon our transmission of the final bill for services rendered in the Matter, unless that relationship is earlier terminated in writing by either of us; provided, however, if the Matter involves general advice of an ongoing nature, the relationship will end one month after the last substantive work you ask us to perform. Routine responses to auditor requests will not be considered substantive work.

The Firm has not been retained to provide Client with any tax advice.  The Matter may have specific tax ramifications, and you should consult with tax advisors regarding those potential tax consequences.

The Matter may be covered by Client's insurance policies, and you should review those policies to determine whether you believe any insurance company should be notified of the Matter. Unless we agree otherwise in writing, our engagement does not include advice or representation concerning such coverage.

The Firm has not been retained to provide Client with advice concerning securities law or whether any particular matter or potential matter is material or must be disclosed to auditors or otherwise.

Please note that applicable legal principles and analysis may change subsequent to conclusion of our representation of you in the Matter.  We would be pleased to advise you as to these changes at your request but will not be obliged to do so on our own initiative.

**Expenses**

In addition to the fees described in the Engagement Letter, we will invoice you for disbursements made or incurred on your behalf, if any.  These expenses typically include such items as document reproduction, travel expenses, bulk or package mailing, messenger services, filing fees, any computer-aided legal research that falls outside of our Firm's plan, and the costs of depositions or other transcripts of testimony.

**Billing and Payment**

Our statements will be accompanied by detailed reports including descriptions of the services performed, the time incurred, and the identity of the personnel performing the services. Our statements will be rendered monthly and are payable within thirty (30) days.  We are happy to discuss our billings with you at any time and welcome the opportunity to address any questions you may have.  However, to the extent you wish to dispute any of the charges on our monthly

billing statements, you must raise any such disputes within thirty (30) days of your receipt of same. Any disputes not raised within this thirty (30) day window are waived.

To pay the retainer and our statements, you may remit payment electronically via any of the means referenced in your emailed statement, to the extent you receive emailed statements. If not, you may send a check payable to Watstein Terepka LLP to the attention of the attorney who signed your Engagement Letter, or send payment electronically to the following account:

**For ACH /ETF transactions:**

**Wells Fargo Bank, N.A.**
ABA/Routing # 061000227
Acct #2459257818
1605 Monroe Dr NE
Atlanta, GA 30324 (account address)

**For wire transactions:**

**Wells Fargo Bank, N.A.**
Domestic Incoming ABA/Routing # 121000248
Acct #2459257818
420 Montgomery Street
San Francisco, CA 94104 (account address)

We will also provide payment options via LawPay. Through LawPay, you will be able to pay either by e-Check or Credit Card. The link to pay via LawPay will be embedded in sent invoices. Please note, payments taken by LawPay may include a charge, including a 3% Credit Card surcharge, to account for processing charges.

The above are the only payment methods we accept and the only accounts at which we accept payments. To the extent anyone asks you to send funds for our bills via any other payment method, it may be an attempt at fraud. The Firm will not be responsible for any payments that Client may make to other accounts or via other payment methods, and such payments will not be credited toward our bills. If you have any questions about whether a request for payment is legitimate, please contact our Director of Operations Keith Dye at kdye@wtlaw.com.

In the event our statements are not timely paid, or that payment terms satisfactory to us are not established, we reserve the right to renegotiate the terms of the Agreement, to terminate it and withdraw from this or any representation of Client, and/or to pursue other remedies, including the right to charge interest of up to 1.5% per month (or the highest rate of interest allowed by applicable law, whichever is higher) for any statement which has not been paid within thirty (30) days after we sent it. It is further agreed that, should it become necessary for the Firm to resort to legal action, arbitration, or any other proceeding to collect its fees, costs, or expenses, the prevailing party shall recover all attorneys 'fees and costs in connection with such proceeding. For purposes of this paragraph, the Firm will be the prevailing party to the extent it recovers anything

in such proceeding or, if such a definition is not enforceable under applicable law, to the extent the Firm recovers more than Client was willing to pay prior to such proceeding.

**Attorneys' Lien**

Please note that, by signing the Engagement Letter, you are consenting to the granting of an attorney's lien to the Firm on any and all claims or causes of action which are the subject of our representation of you pursuant to the Engagement Letter, as well as any and all other claims or causes of action the Firm may advance for you in connection with any other matter where the Firm has been retained to act or has acted as counsel on your behalf. This lien will be for the full amount of attorney's fees and costs owed to the Firm on all matters, regardless of the matter or matters to which those fees and costs relate. This lien will be in addition to any other rights the Firm may have to recover sums owing from you under this Agreement. Should you desire, you may seek the advice of independent counsel of your choice with regard to the liens you are granting hereunder, and we will of course give you the time necessary to do so if advised you need such time.

**Client Cooperation and Communications**

To enable us to render services effectively, you agree that you have and will continue to disclose fully and accurately all facts and keep us apprised of all developments relating to the Matter. You also agree to cooperate fully with us, to be available to attend meetings and conferences in regard to the Matter, and to provide us with all of the information and documents we request to effectively represent and advise you with regard to the Matter.

We anticipate communicating with you from time to time by email and phone. These forms of communication may not be encrypted and are not completely secure against unauthorized access. Because they do not ensure confidentiality, there is some risk of disclosure and loss of attorney-client privilege associated with these forms of communication. Should you object to our using any one or more of these forms of communication, please let us know immediately so that we may discuss ways in which we can attempt to honor that request.

**Termination of Representation**

You have the right to terminate our services at any time for any reason by written notice. If you exercise that right, you will promptly pay the Firm for all fees, costs, and expenses incurred in the Matter prior to our receipt of your notice and for any work required to transition the Matter to new counsel.

Similarly, we reserve the right to terminate our engagement and withdraw from representing Client in the Matter at any time and for any reason upon written notice, as required or permitted by the applicable ethical rules and standards of professional conduct. In the event of such a withdrawal, we will take such steps as are reasonably practicable to protect your interests in the Matter, and you agree to take all steps necessary to relieve us of any further obligation in the Matter, including the execution of any consents or other documents necessary to effect our

withdrawal or substitution of other counsel.  You will also remain obligated to pay the Firm for all fees, costs, and expenses incurred in the Matter prior to our notice.

**Records Retention**

Following termination of representation in a Matter, we will return to you, at your cost, any Client documents and records that you specifically request, and we may elect to keep a copy of such documents/records.  As for your remaining documents/records in our possession, unless you provide contrary written instructions prior to termination of representation in a Matter, you agree that we may, after a reasonable period of time has passed and in our sole discretion, destroy such documents without further notice.  Unless otherwise agreed, we may keep our own Firm files concerning the Matter.  Subject to applicable ethical rules and standards of professional conduct, these Firm files may include, for example, firm administrative records, time and expense reports, personnel and staffing materials, credit and accounting records, and internal lawyers' work product (such as drafts, notes, internal memoranda, legal research, and factual research, including investigative reports, prepared by or for the internal use of our lawyers).

**Professional Liability Insurance**

The rules of professional responsibility or other ethical rules or standards applicable to attorneys in some states require that law firms inform clients whether they have professional liability insurance.  The Firm does, of course, have such coverage.

**Severability**

If any provision of the Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

**Effective Date and Modification by Subsequent Agreement**

The Agreement, comprised of the Engagement Letter and this Attachment, governs all legal services performed by the Firm for Client concerning the Matter, commencing with the date the Firm first performed such services.  The Agreement contains the entire agreement between the Firm and Client regarding the Matter.  No other agreement, statement, or promise made on or before the effective date of the Agreement will be binding on the parties.  The Agreement may be modified by only by a writing signed by the Firm and Client.

# EXHIBIT B



**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

| | |
|---|---|
| **Mediation:** If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box ☐. There is no additional administrative fee for this service. | |
| You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement. | |

| | | |
|---|---|---|
| Name of Respondent:  Timeshares Direct, Inc. | | |
| Address:  5900 Lake Ellenor Drive, STE 260 | | |
| City:  Orlando | State:  Florida | Zip Code:  32809 |
| Phone No.:  321-329-3120 | Fax No.:  877-847-1175 | |
| Email Address: | | |
| Name of Representative (if known):  Jeffrey W. Frantz | | |
| Name of Firm (if applicable): | | |
| Representative's Address:  5900 Lake Ellenor Drive, STE 260 | | |
| City:  Orlando | State:  Florida | Zip Code:  32809 |
| Phone No.:  321-329-3120 | Fax No.: | |
| Email Address:  jeffreywfrantz@gmail.com | | |
| The named claimant, a party to an arbitration agreement which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration. | | |

| |
|---|
| Brief Description of the Dispute: |
| **See attached.** |
| Dollar Amount of Claim: $  24,982.50 (with $5,000 for attorney's fees) |
| Other Relief Sought: ☑ Attorneys Fees   ☑ Interest   ☑ Arbitration Costs   ☑ Punitive/Exemplary<br>☑ Other:  Declaratory Relief |
| Amount enclosed: $  950<br>In accordance with Fee Schedule: ☐ Flexible Fee Schedule ☑ Standard Fee Schedule |
| Please describe the qualifications you seek for arbitrator(s) to be appointed to hear this dispute:<br><br>Commercial litigation and Telephone Consumer Protection act experience. |
| Hearing locale:  Atlanta, GA<br>*(check one)* ☑ Requested by Claimant  ☐ Locale provision included in the contract |



**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

| | | |
|---|---|---|
| Estimated time needed for hearings overall: **8** | hours or **1** | days |

Type of Business:

Claimant: **Law Firm**          Respondent: **Real Estate**

Are any parties to this arbitration, or their controlling shareholder or parent company, from different countries than each other?

**No**

| Signature (may be signed by a representative): /s/Ashley Futrell Hinkson | Date: 07/02/2025 |
|---|---|

Name of Claimant: **Watstein Terepka LLP**

Address (to be used in connection with this case): **75 14th Street, NE, Suite 2600**

| City: **Atlanta** | State: **Georgia** | Zip Code: **30309** |
|---|---|---|

| Phone No.: **404-905-9830** | Fax No.: |
|---|---|

Email Address: **ahinkson@wtlaw.com**

Name of Representative: **Ashley Futrell Hinkson**

Name of Firm (if applicable): **Watstein Terepka LLP**

Representative's Address: **75 14th Street, NE**

| City: **Atlanta** | State: **Georgia** | Zip Code: **30309** |
|---|---|---|

| Phone No.: **404-905-9830** | Fax No.: |
|---|---|

Email Address: **ahinkson@wtlaw.com**

To begin proceedings, **please file online at www.adr.org/fileonline.** You will need to upload a copy of this Demand and the Arbitration Agreement, and pay the appropriate fee.

Case 1:25-cv-23650-BB   Document 1-1   Entered on FLSD Docket 08/13/2025   Page 27 of 101

**IN THE COUNTY COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2025-117079-CC-05
SECTION: CC06
JUDGE: Luis Perez-Medina

**TIMESHARES DIRECT, INC.**

Plaintiff(s) / Petitioner(s)

vs.

**WATSTEIN TEREPKA LLC**

Defendant(s) / Respondent(s)

_____/

## COUNTY CIVIL UNIFORM CASE MANAGEMENT ORDER SETTING PRETRIAL DEADLINES AND RELATED REQUIREMENTS (STREAMLINED PATHWAY)

ALL PARTIES MUST READ CAREFULLY, AS STRICT COMPLIANCE IS MANDATORY AND ALL DEADLINES WILL BE STRICTLY ENFORCED UNLESS CHANGED BY COURT ORDER.

Pursuant to amended Rule 1.200(d)(2), "the Court must issue a case management order that specifies the projected or actual trial period based on the case track assignment, consistent with administrative orders entered by the chief judge of the circuit."

In compliance with the mandatory requirements regarding case management, the Court hereby **ORDERS** as follows:

1. The specific pretrial deadlines and requirements set forth herein will be strictly enforced unless changed by court order. Non-compliance with any part of this Order may result in sanctions including, but not limited to, striking of pleadings, monetary sanctions, waiver and/or default. It is the parties' responsibility to promptly and timely schedule hearings on filed motions.

2. The deadlines contained in this Order cannot be waived or extended by stipulation of the parties and remain in effect unless changed by court order. Settlement negotiations are not a basis for tolling any deadlines set forth in this order. The parties may request the extension of deadlines in accordance with Rule 1.200(e). Rule 1.200(e)(1) provides that: *"parties may submit an agreed order to extend a deadline if the extension does not affect the ability to comply with the remaining dates in the case management order. If extending an individual case management deadline may affect a subsequent deadline in the case management order, parties must seek an amendment of the case management order, rather than submitting a motion for extension of an individual deadline."* Any motions to extend a deadline, amend a

case management order, or alter a projected trial period must comply with the requirements of Rule 1.200(e)(3); Specifically, such motions must specify:

- the basis of the need for the extension, including when the basis became known to the movant;

- whether the motion is opposed;

- the specific date to which the movant is requesting the deadline or projected trial period be extended, and whether that date is agreed by all parties; and

- the action and specific dates for the action that will enable the movant to meet the proposed new deadline or projected trial period, including, but not limited to, confirming the specific date any required participants such as third-party witnesses or experts are available.

3. In accordance with Rule 1.202(a), before filing a non-dispositive motion, except for those motions exempted by Rule 1.202(c), the movant must confer with the opposing party in a good-faith effort to resolve the issues raised in the motion.  At the end of the motion, the movant must file a certificate of conferral substantially in the form provided by Rule 1.202(b), either certifying that conferral occurred or certifying that conferral is not required under Rule 1.202.  Failure to comply with the requirements of Rule 1.202 may result in an appropriate sanction, including denial of a motion without prejudice. The purposeful evasion of communication under Rule 1.202 may result in an appropriate sanction.

4. In the event parties are unable to coordinate any non-dispositive and non-evidentiary hearing, deposition, or motion within a reasonable period of time (not less than 72 hours) and after 3 documented attempts, the moving party shall unilaterally set the issue for hearing pursuant to divisional instructions to occur no less than 14 days and no more than 45 days after the third attempt.

5. Notices of Unavailability: Notices of unavailability have no effect on the deadlines set by the case management order. If a party is unable to comply with a deadline in a case management order, the party must take action consistent with subdivision (e)(1) of Rule 1.200.

6. Inability to Meet Case Management Deadlines: if any party is unable to meet the deadlines set by the case management order for any reason, including due to the unavailability of hearing time, the affected party may promptly set a case management conference and alert the Court. A party choosing to set a case management conference for this reason, must do so prior to the expiration of the deadline or deadlines unable to be met, and must alert the Court.  The notice of case management conference must identify the issues to be addressed in the case management conference.

7. Timing and Sequence of Discovery:
- A party may not seek discovery from any source before that party's initial disclosure obligations are satisfied, except when authorized by these rules, by stipulation, or by court order.

- Except as provided in subdivision (c)(5) of Rule 1.280 or unless the parties stipulate or the court orders otherwise, methods of discovery may be used in any sequence, and the fact that a party is conducting discovery, whether by deposition or otherwise, must not delay any other party's discovery.

8. Settlement: Counsel must immediately notify the Court in the event of settlement and submit a stipulation of settlement and order of dismissal. Counsel must also notify the Court of any pending hearings that will be canceled as a result of the settlement.

The following litigation deadlines are set pursuant to Rule 1.200(d)(2)(A-I) and Rule 1.280:

A. <u>SERVICE</u>: Plaintiff must serve their actions promptly by **11-11-2025** and in compliance with Florida Rule of Civil Procedure 1.070.
   • Service issues must be addressed promptly and with diligence.

   • Motions for extension must be filed prior to the expiration of this deadline.

   • No extensions pursuant to Florida Rule of Civil Procedure 1.070 will be granted without specific proof of diligent effort to effect service and a written explanation of what efforts the Plaintiff intends to pursue to effect service successfully, with proposed deadlines.

B. <u>SERVICE UNDER EXTENSIONS</u>:
   • If a party fails to serve a defendant by the date specified in an order granting an extension, the Court will dismiss the action against that defendant without further notice.

   • If a party asserts good cause or excusable neglect to excuse its failure to serve a defendant by an extended deadline, the party may file an additional motion for extension (or if the case has already been dismissed, a motion to vacate the order of dismissal) detailing the good cause or excusable neglect.

   • In any event, no extension to serve a defendant beyond **01-10-2026** will be allowed.

C. <u>ADDITION OF NEW PARTIES</u>: shall occur by **12-11-2025**.

D. <u>INITIAL DISCOVERY DISCLOSURES (Rule 1.280(a)(1)(A))</u>: The following must be provided within 60 days after the service of the complaint or joinder, unless a different time is set by Court order. Except as exempted by subdivision (a)(2) or as ordered by the Court, a party must, without awaiting a discovery request, provide to the other parties the following initial discovery disclosures unless privileged or protected from disclosure:
   • the name and, if known, the address, telephone number, and email address of each individual likely to have discoverable information- along with the subjects of that information-that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

   • a copy or a description by category and location of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control (or if not in the disclosing party's possession, custody, or control, a description by category and location of such information) and may use to support its claims or defenses, unless the use would be solely for impeachment;

   • a computation for each category of damages claimed by the disclosing party and a copy of the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; provided that a party is not required to provide computations as to noneconomic damages, but the party must identify

categories of damages claimed and provide supporting documents; and

- a copy of any insurance policy or agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

BASIS FOR INITIAL DISCOVERY DISCLOSURE; UNACCEPTABLE EXCUSES; OBJECTIONS: a party must make its initial discovery disclosures based on the information then reasonably available to it. A party is not excused from making its initial discovery disclosure because it has not fully investigated the case or because it challenges the sufficiency of another party's initial discovery disclosures or because another party has not made its initial discovery disclosures. A party who formally objects to providing certain information is not excused from making all other initial discovery disclosures required by this rule in a timely manner.

If a party fails to make a disclosure required by rule 1.280(a), any other party may move to compel disclosure and for appropriate sanctions.

E. FACT WITNESS LISTS: must be filed 60 days from the date of service. The fact witness list must contain the name and, if known, the address, telephone number, and email address of all non-expert witnesses. *Generic descriptions such as "police officer", "records custodian," "insured", "claimant," "engineer," "claims adjuster," may, in the Court's discretion, be stricken from the witness list.* All witness lists must include a brief description of the substance and scope of the testimony to be elicited. Within 30 days of discovering previously unknown witnesses, either party may seek leave of Court to amend their witness list.

F. <u>EXHIBIT LIST</u>: must be filed 15 days before calendar call. The exhibit list must disclose a list of all documentary and physical evidence intended to be used at trial. Each item must be specifically described and listed by number and description. General descriptions of exhibits are subject to being stricken. All listed exhibits must have been made available to opposing counsel for examination and copying.

G. <u>COMPLETION OF FACT DISCOVERY</u>: must occur by 180 days from the date of service. This includes the propounding of and response to verified interrogatories, the production of documents, and the completion of depositions.  All inspections, depositions, and examinations must be completed no later than the date specified above. The parties must timely coordinate the scheduling and setting of depositions for all witnesses and/or parties they intend to depose.

H. <u>COMPLETION OF EXPERT DISCOVERY</u>: must occur by 240 days from the date of service. Specifically, parties must disclose all expert witnesses to be called at trial, including their names and all information regarding their testimony, as well as the address, telephone number, and email address of each. This includes disclosing the expert's area of expertise and serving a copy of each expert's reports (if such a report exists) or answers to expert interrogatories (if propounded). Each party is limited to one expert per specialty. No other expert testimony will be permitted at trial. All inspections, depositions, and examinations must be completed no later than the date specified above. The parties must timely coordinate the scheduling and setting of depositions for all witnesses and/or parties they intend to depose.

I. <u>SUPPLEMENTAL RESPONSES</u>: A party who has made a disclosure or has responded to

any type of discovery, must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing or as ordered by the Court.

J. <u>MOTIONS FOR SUMMARY JUDGMENT</u>: must be filed and served no later than 270 days from the date of service.   Responses to Motions for summary judgment must be filed no later than 40 days after service of the motion for summary judgment.  If the non-movant fails to respond to the motion for summary judgment, the court may consider the facts asserted in the motion undisputed for purposes of the motion and, if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it, grant summary judgment. Any hearing on a motion for summary judgment must be set for a date at least 10 days after the deadline for serving a response, unless the parties stipulate or the court orders otherwise.

K. <u>DAUBERT HEARINGS</u>: must be heard no later than 300 days from service.

L. <u>FILING AND RESOLUTION OF ALL OBJECTIONS TO PLEADINGS</u>: must be filed no later than120 days from service; must be heard no later than 180 days from service.  Any motion not filed and heard prior to the expiration of this deadline may be deemed abandoned or denied absent extraordinary circumstances which could not have been prudently anticipated, or by order of the Court entered prior to the expiration of the applicable time limitation.

M. <u>FILING AND RESOLUTION OF ALL PRETRIAL MOTIONS</u>: All pretrial motions must be filed no later than 300 days from service and must be heard no later than 330 days from service.

N. <u>FILING OF MOTIONS IN LIMINE</u>: Motions in limine must be filed no later than 300 days from service.

O. <u>COMPLETION OF ALTERNATIVE DISPUTE RESOLUTION</u>: must be completed no later than 300 days from service.  The parties must comply with Florida Rules of Civil Procedure <u>1.700, 1.710, 1.720, 1.730, and 1.750</u> as to the conduct of mediation. Costs of mediation will be borne equally by both parties. Failure to mediate in good faith may result in the imposition of monetary sanctions.

P. <u>TRIAL</u>: The projected date of trial is **<u>07-14-2026</u>**. A firm trial date must be issued by the Court no later than 45 days before the projected trial period set forth in this case management order.
- MOTIONS FOR CONTINUANCE OF TRIAL: Motions to continue trial are disfavored and should rarely be granted and then only upon good cause shown. Successive continuances are highly disfavored. Lack of due diligence in preparing for trial is not grounds to continue the case. Motions for continuance based on parental leave are governed by Florida Rule of General Practice and Judicial Administration 2.570.
- Motion for Continuance Requirements: A motion to continue trial must be in writing unless made at a trial and, except for good cause shown, must be signed by the named party requesting the continuance. The motion must be filed promptly after the

appearance of good cause to support such motion. Failure to promptly request a continuance may be a basis for denying the motion to continue. The moving party or counsel must make reasonable efforts to confer with the non-moving party or opposing counsel about the need for a continuance, and the non-moving party or opposing counsel must cooperate in responding and holding a conference. All motions for continuance, even if agreed, must state with specificity: the basis of the need for the continuance, including when the basis became known to the movant; whether the motion is opposed; the action and specific dates for the action that will enable the movant to be ready for trial by the proposed date, including, but not limited to, confirming the specific date any required participants (such as third party witnesses or experts) are available; and the proposed date by which the case will be ready for trial and whether that date is agreed by all parties. If the required conference did not occur, the motion must explain the dates and methods of the efforts to confer. Failure to confer by any party or attorney under this requirement may result in sanctions.

- Trials that are not reached during the trial period set by Court order will be set in a new trial period that is as soon as practicable.

Q. <u>CASE MANAGEMENT CONFERENCES</u>: will be set by the individual judges pursuant to their division procedures found on their website.

R. <u>JOINT PRETRIAL STIPULATION</u>: A Joint Pretrial Stipulation must be filed by all parties (via counsel of record) at least seven calendar days before the scheduled calendar call. All parties must cooperate in good faith in preparation of the Joint Pretrial Stipulation. Unilateral pretrial stipulations will not be accepted. The single, unified submission must contain the following information in separately numbered paragraphs or sections:
   - Stipulated Statement of Facts: A list of those facts that can be stipulated to and require no proof at the trial, together with a concise, impartial statement of the facts of the case.

   - Statements of Disputed Law & Fact: Those issues of law and fact that are to be tried.

   - Jury Instructions: If the trial is a jury trial, counsel must identify and attach all agreed upon standard instructions and all special instructions. Any disputed jury instructions must be attached and identified as to the party that proposed the instruction, along with copies of supporting case law.

   - Verdict Forms: If the trial is a jury trial, the proposed jury verdict forms must be attached and designated as agreed to or disputed.

   - Motions in Limine: Each party must make any anticipated motion(s) in limine indicating all stipulations/agreed items and any motion(s) in limine requiring a Court ruling.

   - Trial Estimate: Each party must provide an estimate of the number of days for trial.

   - Other issues: The parties must list any other issue that could potentially take up unnecessary time during the trial to facilitate the resolution of those matters prior to the trial date.

S. If the parties believe that this case should proceed under a General Pathway case management order instead of this Streamlined Pathway case management order, parties may

request a track change by motion demonstrating good cause and, setting forth, with specificity, a sufficient factual basis to support the different assignment. Any motion to change the track to which a case is assigned must be filed within 10 days of receipt of this order, or promptly after the appearance of good cause to support the motion. A track assignment may be changed by the court on its own motion.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>20th day of July,</u> <u>2025</u>.

<u>2025-117079-CC-05 07-20-2025 10:03 PM</u>
Hon. Luis Perez-Medina

**COUNTY COURT JUDGE**
Electronically Signed


**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355, Email: ADA@jud11.flcourts.org at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711.**


**Electronically Served:**

- Jeremy Leonard Kahn: jkahn@bfvlaw.com
- Jeremy Leonard Kahn: kmoore@bfvlaw.com
- Jeremy Leonard Kahn: notices@bfvlaw.com

☐ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.
☒ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION<br>☒ CIVIL<br>☐ DISTRICTS<br>☐ OTHER | SUMMONS 20 DAY CORPORATE SERVICE<br>(a) GENERAL FORMS | CASE NUMBER<br>2025-117079-GE-05 |
|---|---|---|
| PLAINTIFF(S)<br>TIMESHARES DIRECT, INC. | VS.  DEFENDANT(S)<br>WATSTEIN TEREPKA, LLC<br>a/k/a WATSTEIN TEREPKA LLP | SERVICE |

THE STATE OF FLORIDA:

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s): WATSTEIN TEREPKA, LLC a/k/a WATSTEIN TEREPKA LLP

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney: Jeremy L. Kahn

whose address is: 3475 Piedmont Road, NE, Suite 1640, Atlanta, Georgia 30305

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days.**" after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| JUAN FERNANDEZ-BARQUIN<br>CLERK OF THE COURT AND COMPTROLLER<br>MIAMI-DADE COUNTY<br>CIRCUIT AND COUNTY COURTS | adripal<br>BY:_____<br>DEPUTY CLERK | DATE<br>7/21/2025 |
|---|---|---|

CLOCK IN

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@jud11.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."

**IN THE COUNTY COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY**

TIMESHARES DIRECT, INC.,

      Plaintiff,                       CASE NO: 2025-117079-CC-05

vs.

WATSTEIN TEREPKA, LLC a/k/a
WATSTEIN TEREPKA LLP,

      Defendant.

_____/

**DEFENDANT'S MOTION TO DETERMINE CONFIDENTIALITY OF COURT
RECORDS AND TO SEAL THEM IN THE INTERIM**

Under Florida Rule of General Practice and Judicial Administration 2.420(c) and

(e), Defendant Watstein Terepka LLP (WT) moves the Court: (1) to confirm that the

communications WT referenced in its motion to compel Plaintiff Time Shares Direct

(TDI) to arbitrate this fee dispute may be filed publicly, either because they're not legal

advice or because TDI waived any attorney-client privilege under § 90.502(4)(c), Fla. Stat.,

by filing this case; and (2) to seal those communications until the Court decides this issue.

WT states as follows in support.

1.      This action is a fee disagreement between TDI and its former lawyers, WT.

After WT filed an arbitration against TDI seeking recovery of fees TDI refused to pay,

TDI filed this competing lawsuit against WT in court.

2.      WT then moved to compel TDI to arbitrate this dispute under the terms of

the parties' engagement agreement. In support, WT redacted certain information and

exhibits containing communications with its former client, TDI. *See* Motion to Compel at

6; Exs. 1-5.

3.      Arbitration is a confidential setting that would keep these communications private. WT explained that to TDI as well. WT also explained that, by filing this lawsuit publicly, TDI was waiving privilege as to communications relevant to this fee dispute. TDI insisted on filing this case anyway, believing that doing so would force WT to accept an unjustified haircut on its fees. That didn't work.

4.      The communications at issue are either not legal advice—many communications occurred after WT's representation ended, for example—or fall within the statutory exception to the attorney-client privilege. *See* § 90.502(4)(c), Fla. Stat. (permitting disclosure of attorney-client privileged communications "[w]hen a communication is relevant to an issue of breach of duty by the lawyer to the client or by the client to the lawyer"). This type of dispute is exactly why the statutory exception exists.

5.      For these reasons, WT doesn't object to mentioning the communications on the public docket to resolve whether this dispute should be arbitrated. But WT first moves the Court to declare that the communications may be disclosed solely out of an abundance of caution.

6.      WT has contemporaneously filed a redacted version of its motion to compel arbitration (and its exhibits) on the public docket. Unredacted copies have been provided to both the Court and Plaintiff's counsel via email, consistent with procedural safeguards required by Rule 2.420(e)(3).

WT accordingly asks the Court to: (1) confirm that the referenced communications may be filed publicly, either because they're not legal advice or because TDI waived any protection in such communications by filing this case; and (2) seal them in the interim until it decides the issue.

*[Signature on Following Page]*

2

Dated: July 22, 2025.

Respectfully Submitted,

*/s/ Matthew A. Keilson*
Ryan D. Watstein, FBN 93945
Matthew A. Keilson, FBN 1002294
WATSTEIN TEREPKA, LLP
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Phone:  305-498-3216
Email:  mkeilson@wtlaw.com
Email:  ryan@wtlaw.com

*Attorneys for Defendant*

3

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 22, 2025, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using the Court's electronic filing system, which will serve all counsel of record.

*/s/ Matthew A. Keilson*
Matthew A. Keilson

**IN THE COUNTY COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY**

TIMESHARES DIRECT, INC.,

      Plaintiff,                    CASE NO: 2025-117079-CC-05

vs.

WATSTEIN TEREPKA, LLC a/k/a
WATSTEIN TEREPKA LLP,

      Defendant.

_____/


**<u>DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION</u>**

## I.     INTRODUCTION

This case is a fee disagreement between Orlando-based Timeshares Direct (TDI) and its former lawyers, Atlanta-based Watstein Terepka (WT). *See generally* Compl. TDI doesn't dispute that it entered an interstate contract with WT to save it from a nationwide class action seeking millions, that WT successfully did that, or that TDI's total spend with WT was a fraction of what similar cases require. *Rantowich v. Timeshares Direct, Inc.*, No. 6:24-cv-02033, ECF No. 26 (M.D. Fla. Mar. 26, 2025) (resolving case on an individual, non-class basis).

Nor does TDI dispute that its contract with WT contained an arbitration provision that unmistakably delegated threshold issues of arbitrability, "such as the scope or enforceability of this arbitration provision," to the arbitrator. Compl., Ex. A (engagement agreement). TDI doesn't even dispute that its principal—Jeff Frantz, a lawyer—read and understood the arbitration provision. It still asks the Court to declare the arbitration provision (but not the parties' contract) "unenforceable" because it doesn't contain the *exact* disclaimer language purportedly required by a Florida Bar Rule—even though it contains the substance and then some in a more conspicuous position than required. Compl. ¶¶ 1-2, 14-15.

The problem with Plaintiff's arguments is that they're foreclosed by binding U.S. Supreme Court precedent, twice over. That precedent dictates that where contract formation isn't challenged and the parties delegate threshold issues of arbitrability to the arbitrator, as here, the Court has "no power to decide the arbitrability issue." *Henry Schein*, *Inc. v. Archer & White Sales*, *Inc.*, 586 U.S. 63, 68 (2019) ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator"). That alone means the Court must

dismiss and compel TDI to arbitrate this dispute. TDI can then make whatever arguments it wants about enforceability to the arbitrator.

Though this Court cannot reach the issue, binding precedent likewise confirms that the arguments TDI ultimately must make to the arbitrator will fail. That's because the Federal Arbitration Act (FAA) preempts "any state rule that discriminates" against arbitration by treating such agreements differently than other types of contracts or that "covertly accomplishes the same objective" in other ways. *See Kindred Nursing Centers Ltd. P'ship v. Clark*, 581 U.S. 246, 248 (2017). The Florida Bar Rule on which TDI relies does exactly that by imposing requirements that expressly single out arbitration, like mandatory bolding and specific disclosures. The FAA applies to the parties' interstate contract and wholly preempts that Florida Bar Rule, full stop. The Supreme Court all but confirmed the same when it invalidated a similar state law under the FAA. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 681–82 (1996) (invalidating state law that required arbitration clauses to be on the first page of agreement in underlined and capital letters as preempted under the FAA).

But even if the Florida Bar Rule wasn't preempted and the FAA and the Court had the power to hear this dispute, WT's arbitration provision is enforceable under that Rule. The provision, for example, was clear and conspicuous. It also contained all the required disclosures and more, including detailed information on how the parties would conduct arbitration. On top of all that, TDI's lawyer-principal, Jeff Frantz, *admittedly read and understood it.* Florida courts do not require mechanical adherence to form over substance. That's particularly true when they're asked to do so by a company trying to take advantage of a technicality to proceed in a forum that is *less advantageous* solely because it (incorrectly) thought it could use a public dispute to force an unjust settlement.

For these and other reasons below, the Court should immediately dismiss this matter and compel TDI to arbitrate this dispute under binding U.S. Supreme Court precedent.

## II.   RELEVANT BACKGROUND

This case is about a sophisticated lawyer-client, Jeffrey Frantz, who, after securing a favorable outcome in federal court based on Georgia-based law firm WT's work, is now seeking to evade his legal and contractual obligation to pay for those services.

The story is straightforward and as old as time. Late last year, Frantz's Florida-based company, TDI, was named in a putative class action lawsuit filed under the Telephone Consumer Protection Act (TCPA). *See Rantowich v. Timeshares Direct, Inc.*, No. 6:24-cv-02033 (M.D. Fla.). The lawsuit sought millions and was filed by an attorney who routinely forces companies into huge settlements. *Id.*; *see also, e.g.*, *Deshay et al. v. Keller Williams Realty*, No. 2022-CA-000457 (Fla. Cir. Ct.) ($40M settlement in TCPA class action obtained by same attorney that sued TDI); *Wright, et al. v. eXp Realty, LLC*, 6:18-cv-01851-PGB (M.D. Fla. 2021) (same, except obtaining a $26M TCPA class action settlement).

WT specializes in defending putative TCPA class actions. None of WT's hundreds of clients have *ever* paid a class judgment or settlement. Its three partners are ranked as Band 1 (highest tier) in TCPA litigation by Chambers USA, as is WT itself.[1] And the federal judiciary has recognized WT's "extensive expertise," confirming that expertise "well supports [the firm's] rates." *See Reisman v. Ne. Power & Gas*, 2024 WL 795147 (S.D.N.Y. Feb. 26, 2024). Those rates are substantially less than what any firm with even close to WT's record or expertise charges, too. For comparison, the firm ranked second behind WT in Chambers often

---

[1] Watstein Terepka LLP, Litigation: TCPA Class Actions – Georgia, *Chambers USA Guide 2025* (visited July 20, 2025), https://chambers.com/law-firm/watstein-terepka-llp-usa-5:23524293.

charges *more than double* WT's rates.[2] And another firm that recently ranked WT the fourth best firm in the country for TCPA litigation itself charges up *to $4,200 an hour* for this specialized legal work—more than four times the rate of WT's highest-rate partner.[3]

      With this background, Frantz engaged WT to defend his company from this high-exposure TCPA class action, as hundreds of other companies have. And he did so under the terms of WT's (negotiable) engagement agreement. *See* Compl., Ex A. That agreement is short—just a few pages in length—and contains an arbitration provision that contains *two* clauses that delegate threshold issues of arbitrability to the arbitrator: The one contained in the AAA's Commercial Arbitration Rules,[4] which is incorporated by reference, as well as this standalone provision that conspicuously appears at the end of the agreement near the signature line:

> "The Company and the Firm (collectively the "Parties") agree that any dispute arising out of or relating in any way to this Agreement or any services provided by the Firm shall be governed by Georgia law, without regard to rules governing conflicts of law, and settled by arbitration in accordance with the Commercial Arbitration Rules (the "Arbitration Rules") of the American Arbitration Association, including any dispute about arbitrability of any claim or other matter, such as the scope or enforceability of this arbitration provision.

---

[2] Chambers and Partners, Litigation: TCPA & Class Actions — Georgia, *Chambers & Partners*, https://chambers.com /legal-rankings /litigation-tcpa-class-actions -georgia-5:3181:12350:1?l=en-GB (last visited July 21, 2025) (ranking King & Spalding and Dentons behind Watstein Terepka as Band 2).

[3] Eric J. Troutman, FAIR WARNING!!– Troutman Amin, LLP Rates Are Set to SPIKE Next Year (So Get In Now!), TCPAWorld (Sept. 17, 2024), https://tcpaworld.com/2024/09/17/fair-warning-troutman-amin-llp-rates-are-set-to-spike-next-year-so-get-in-now/ (last visited July 21, 2025); *see also* POWER RANKINGS: The Top 10 Best TCPA Defense Lawyers/Firms That YOU Should Be Talking to Right Now, *TCPAWorld* (Mar. 12, 2025), https://tcpaworld.com/2025/03/12/power-rankings-the-top-10-best-tcpa-defense-lawyers-firms-that-you-should-be-talking-to-right-now (last visited July 21, 2025) (ranking WT as fourth best TCPA defense firm in nation, behind author's own firm and prior firm).

[4] Am. Arb. Ass'n, Commercial Arb. Rules, R-7(a), https://www.adr.org /media/ lwanubnp/2025_commercialrules_web.pdf (last visited July 21, 2025) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability[.]").

*Id.* at 2. WT didn't include this arbitration provision because it unilaterally benefited the firm. It did so to avoid having to publicly air its client's "dirty laundry" in the event of a dispute, a fact that WT reiterated to TDI before it filed this suit.

Frantz, an attorney himself,[5] acknowledged his review and acceptance of this agreement via email—as the agreement allows—and responded: "I just realized that your agreement takes this into account. It states that a return email indicating that Timeshares Direct, Inc. ("TDI") agrees to the engagement letter is sufficient. This is what TDI is doing in this email." *See* Ex. 1; *see also* Compl., Ex. A ("[Y]ou may indicate your consent to the Agreement with a return email indicating you intend that email to serve as your electronic signature in the space provided in the Client Signature section of this Engagement Letter").

That email acceptance clause that Frantz unilaterally caught appears *just below* the arbitration provision, meaning Frantz necessarily read the arbitration provision *before* telling WT that he accepted the agreement. Frantz could have negotiated this agreement to remove the arbitration provision, just as other WT clients have done without any pushback from the firm. But he didn't and, instead, expressed his desire to keep the provision, as explained above. WT would have simply removed the provision had Frantz asked, as it has *every* other time a client requested.

WT then proceeded to represent TDI for almost half a year, navigating complex class litigation and numerous public complaints about how TDI "harass[es]" people on the do-not-call registry with "robocalls."[6] Despite these hurdles, WT successfully secured an individual

---

[5] Jeffrey Wolfe Frantz, Fla. Bar Member Profile (last visited July 20, 2025), https://www.floridabar.org/directories/find-mbr/?l Name=frantz&fName=jeffrey&sdx=N&eligible= N&deceased=N&page Number=1&pageSize=10.

[6] BBB Complaints—Timeshares By Owner, *BBB.org*, available at https://www.bbb.org/us/fl/orlando/profile/timeshare-resale-and-rental-marketing/timeshares-by-owner-0733-1068821/complaints?page=2 (last visited July 21, 2025) ("This company has been calling and harassing me for the last year. I am on a Do Not Call List.

(non-class) settlement that TDI was very pleased with, resolved the TCPA claim, and avoided potentially millions in exposure. During the litigation, Frantz repeatedly said he was satisfied with WT's work. ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████

But despite WT's success and Frantz's compliments, Frantz tried to unilaterally dictate what he was willing to pay after the work was done. He didn't take any issue with *a single* decision WT made in the litigation or the result it obtained, though. Instead, Frantz said that he didn't want to pay more than the amount the *plaintiff's counsel* received under the settlement: "[Y]our fees were about $[redacted] and Plaintiffs [sic] counsel received $[redacted] in total fees . . . The above fee disparity is too big to ignore."[7] *See* Ex. 4. WT asked Frantz to discuss over a call, explaining it was a small firm that required full payment, and its fees were low for defending TDI's high-exposure class action. It also noted why Frantz's rationale was illogical. Under his reasoning, Frantz would've been happy to pay WT hundreds of thousands more if it had obtained a *worse* result that ended up with a multi-million-dollar payment to the other side.

Frantz refused WT's invitation to work things out over a phone call. And he never responded to WT's debunking of his illogical rationale. He just reiterated his demand for a discount—on top of the ones WT *already* provided to him—and said he would hire "aggressive[]" lawyer to ensure he gets it. *See* Ex. 5.

---

Moreover I do not own a timeshare nor have I purchased anything from them. Yet nearly every day I get robocalls and voicemail from them.").

[7] WT omits the specific figures given the terms of TDI's settlement.

So, WT initiated an arbitration in AAA to recover its fees consistent with the parties' agreement. Only then did Frantz decide to retain (and presumably pay) a different lawyer (Jeremy Kahn) to litigate this dispute. WT spoke with Kahn, who threatened to file a public lawsuit, alleging for the first time that the arbitration provision Frantz *admittedly read and agreed to* was "unenforceable" because it lacked certain bolded language allegedly required by Florida Bar Rule 4-1.5(i). WT told Kahn that his threats didn't make sense. Why would he want to air his client's dirty laundry in public, considering it may invite additional class actions by drawing even more attention to TDI's calling practices? WT also explained that he couldn't file suit publicly anyway. The arbitration provision delegated threshold issues of arbitrability to the arbitrator, meaning TDI had to submit the case to arbitration to resolve issues of enforceability under binding U.S. Supreme Court precedent.

Kahn ignored all that and proceeded with this lawsuit anyway, presumably thinking WT would roll over if he ran up litigation costs high enough. Then, after he filed, Kahn threatened to seek an emergency injunction—last Friday evening—even though there was no emergency whatsoever. WT responded, explaining that his threat of a Friday-night TRO was frivolous because the firm: (1) didn't even pay the AAA yet, meaning there are no deadlines, let alone imminent ones, and certainly no "emergencies"; and (2) would ask the AAA to stay the arbitration pending the resolution of these proceedings. Kahn didn't care and again threatened to file an emergency TRO despite no urgency whatsoever: "[Y]ou leave us no choice but to proceed with our motion for a temporary injunction." *See* Ex. 6.

But Kahn didn't proceed with a TRO, confirming it was both a bully tactic and an attempt to manufacture a false narrative to get at the engagement agreement's fees-shifting provision. Compl., Ex. A at 5.

WT now moves the Court to dismiss this action and compel arbitration under binding U.S. Supreme Court precedent.

### III.   LEGAL STANDARD

The FAA governs this matter because the agreement containing the arbitration provision is between residents of different states—Georgia for WT and Florida for TDI—and concerns a putative nationwide class action involving alleged telephone calls to consumers across the country, thereby implicating an interstate transaction. *See* 9 U.S.C. §§ 1–2 (stating that FAA governs arbitration agreements involving interstate transactions); *see also Catastrophe Servs., Inc. v. Fouche*, 145 So. 3d 151, 154 (Fla. 4th DCA 2014) ("A contract between a Florida resident and a foreign corporation is an agreement evidencing a transaction involving interstate commerce") (cits. omitted).

Where the FAA applies, federal law supersedes the Florida Arbitration Code. *See Lee v. Smith Barney, Harris Upham & Co.*, 626 So. 2d 969 (Fla. 2d DCA 1993). The FAA likewise "preempts any state rule that discriminates on its face against arbitration or that covertly accomplishes the same objective by disfavoring contracts that have the defining features of arbitration agreements." *Kindred Nursing*, 581 U.S. at 248.

Under both the FAA and the Revised Florida Arbitration Code (which also strongly favors arbitration), courts consider: "(1) whether a valid written agreement to arbitrate exists; [and] (2) whether an arbitrable issue exists[.]"[8] *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999). The second issue may be delegated to the arbitrator to determine. When that happens, the Court may determine only whether there is a valid agreement to arbitrate under

---

[8] Courts may also consider whether the party seeking to compel arbitration waived the right to do so, but WT omits discussion of it here because it's irrelevant. WT already initiated arbitration and has not taken any substantive action in this case so far, so it could not have waived arbitration.

binding U.S. Supreme Court precedent. "Upon a showing that a party failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011); *see Schein*, 586 U.S. at 63 (confirming that "a court may not override the contract" and has "no power to decide the arbitrability issue" when it is delegated); *see also, e.g.*, *Rodriguez v. JPay, Inc.*, 2019 WL 11623936, at *3 (S.D. Fla. Oct. 17, 2019), *rep. and rec. adopted*, 2019 WL 11623933 (S.D. Fla. Oct. 31, 2019) (compelling arbitration given delegation clause to allow arbitrator to determine whether the arbitration provision is valid and enforceable).

Here, TDI only challenges the enforceability of the arbitration provision—not contract formation. Comp. ¶ 1 ("This [is] an action to declare an illegal arbitration provision unenforceable."). TDI's counsel confirmed the same in an email: "The *arbitration agreement* is void[.]" *See* Ex. 7. The Court must therefore compel TDI to arbitrate this dispute.

## IV.   ARGUMENT

The Court must compel arbitration for three independent reasons: (1) TDI entered into an arbitration agreement that delegates threshold issues of arbitrability, like enforceability, to the arbitrator, (2) the FAA preempts, and thus invalidates, the relevant Florida Bar Rule that TDI uses to try and avoid the contractual obligations he understood and agreed to, and (3) even if that weren't true, the arbitration provision is enforceable anyway because it provides the disclosures and then some in a more conspicuous manner than required.

### A.   TDI Entered a Valid Arbitration Agreement that Delegates Threshold Issues of Arbitrability to the Arbitrator, Not this Court.

TDI entered an agreement to arbitrate when Frantz, TDI's lawyer-principal, assented to the engagement agreement via email late last year: "[WT's agreement] states that a return email indicating that Timeshares Direct, Inc. ("TDI") agrees to the engagement letter is

sufficient. This is what TDI is doing in this email." *See* Ex. 1; *see also Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So.2d 383, 385 (Fla. 4th DCA 1997) (noting a contract arises when the parties' assent is manifested through written or spoken words, or "inferred in whole or in part from the parties' conduct."). TDI concedes he entered into such an agreement, too. His Complaint doesn't even challenge contract formation or the delegation clause. It only disputes the enforceability of the arbitration provision as a whole: "This [sic] an action to declare an illegal *arbitration provision* unenforceable[.]" Compl. ¶ 1 (emphasis added).

   This alone requires the Court to submit this case to arbitration because the same provision delegates threshold issues of arbitrability—"including any dispute about arbitrability of any claim or other matter, such as the scope or enforceability of this arbitration provision"—to the arbitrator. Compl., Ex. A (containing a *second* delegation clause by incorporating the AAA rules). In reversing multiple lower courts, the Supreme Court has made this issue crystal clear: "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *See Schein*, 586 U.S. at 67-68; *see also Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1262 (11th Cir. 2017) (recognizing that "parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement") (citing *Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)).

   TDI's challenge falls squarely within the delegation provision because it solely concerns enforceability, so the Court "has no power to decide the arbitrability issue." *Schein*, 586 U.S. at 63. The FAA "leaves no place for exercise of discretion" in this circumstance.

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). That's true **even when a party's argument in favor of arbitration is "wholly groundless."** *Schein*, 586 U.S. at 68 (emphasis added).

In *Seminole County Tax Collector v. Domo, Inc.*, for example, the court held that it couldn't entertain the plaintiff's argument that the arbitration provision was "void[]" under Florida law given a delegation clause. *See* 2019 WL 1901019, at *9 (M.D. Fla. Feb. 13, 2019), *rep. and rec. adopted*, 2019 WL 1772108 (M.D. Fla. Apr. 23, 2019). Issues about the "alleged voidness" on state law grounds were "for the arbitrator to decide" instead. *Id.*; *see also, e.g.*, *Best v. Education Affiliates*, 82 So. 3d 143, 147 (Fla. 4th DCA 2012) (rejecting similar argument—even *before Schein*—that arbitration agreement was "invalid on its face" because it "expressly delegated to the arbitrators the determination of the validity of the agreement.") (citing *Rent–A–Center*, 561 U.S. at 68–69)); *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1303 (11th Cir. 2022) (addressing similar argument that arbitration provision was illegal but compelling case to arbitration under delegation clause because courts "enforce agreements to arbitrate the validity or enforceability of primary arbitration agreements as a matter of common contractual sense"). The Court must dismiss and compel arbitration here as well.

## B.   Binding Supreme Court Precedent Preempts Florida Bar Rule 4-1.5(i) Anyway.

Even if the Court could entertain this dispute—it can't and thus doesn't need to reach this issue as a matter of binding precedent—the FAA preempts Florida Bar Rule 4-1.5(i) under other (equally clear) authority from the U.S. Supreme Court.[9]

That authority says that the FAA preempts and therefore invalidates any state or local rule that discriminates against arbitration (expressly or covertly) or imposes special

---

[9] As noted above, the parties' agreement contains a Georgia choice of law provision, meaning the Florida Rule shouldn't apply. *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000). WT assumes without conceding the Florida Rule applies for the sake of argument, however.

formalities or burdens that don't apply to other contracts. *See Kindred Nursing*, 581 U.S. at 248 (2017) ("[T]he [FAA] preempts any state rule that discriminates on its face against arbitration or that covertly accomplishes the same objective by disfavoring [arbitration ]contracts[.]"); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("[C]ourts must place arbitration agreements on an equal footing with other contracts, *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443 [ ](2006), and enforce them according to their terms, *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 [ ](1989)). Florida Bar Rule 4-1.5(i) does just that by purporting to invalidate valid arbitration provisions based on hyper technical requirements—like failing to include a bolded statement, regardless of whether the arbitration provision is otherwise conspicuous and clear and includes all the information from the Rule's required statement.

The Supreme Court invalidated similar arbitration provisions even before *Kindred Nursing*. In *Doctor's Association v. Casarotto*, for example, the Court held that a state law that required arbitration clauses to be on the first page of a contract in underlined and capital letters was preempted by the FAA. 517 U.S. 681, 683 (1996) ("We hold that Montana's first-page notice requirement, which governs not 'any contract,' but specifically and solely contracts 'subject to arbitration,' conflicts with the FAA and is therefore displaced by the federal measure."). Florida Bar Rule 4-1.5(i) imposes similar requirements that singles out arbitration agreements from other contracts. The FAA accordingly preempts and invalidates that Florida Bar Rule, too.

### C.  Even Without Preemption, WT Complied with the Florida Rule.

Finally, WT complied with Florida Bar Rule 4-1.5(i), assuming it applied and wasn't fully preempted by the FAA.

Here, Frantz (a lawyer) doesn't dispute that he read, understood, and agreed to the arbitration provision on behalf of TDI. Nor could he—Frantz admittedly read the provision appearing *right after* the arbitration language, one that allowed him to assent to the agreement by sending an email. *See supra* at 5. He instead contends that the provision is unenforceable solely because certain language was not printed in bold font and did not track the precise language of the Rule verbatim.

This is a red herring that doesn't impact enforceability. WT's engagement letter is short—just a few pages—and includes a conspicuous and detailed arbitration provision on the second page (as opposed to being buried in pages of "legalese") and right above the signature lines. That's even *more* conspicuous than what's required because a company can comply with the Florida Rule by burying an arbitration disclosure in a 100-page agreement, so long as the disclosure is bolded. It even advised Frantz and TDI to "consult independent counsel" for advice related to the arbitration provision, which is consistent with Rule 4-1.5(i). Compl. Ex. A at 2; *see also* Rule 4-1.5(i) (recommending saying: "Before you sign this agreement you should consider consulting with another lawyer about the advisability of making an agreement with mandatory arbitration requirements."). On top of that, it disclosed exactly how arbitration would be conducted, meaning WT's disclosure was more comprehensive than the Florida Bar Rule, too. All that is more than sufficient to comply with the Rule because Florida courts do not require mechanical adherence to form over substance.

Consider *Ramkelawan v. Morgan & Morgan*, where the court enforced an arbitration agreement that did not strictly follow Rule 4-1.5(i) but substantially complied and was knowingly accepted by the client. 336 So. 3d 71, 75 (Fla. 3rd DCA 2021); *see also, e.g.*, *Guy Bennett Rubin, P.A. v. Guettler*, 73 So. 3d 809, 813 (Fla. 4th DCA 2011) (finding contingent fee

agreement enforceable despite technical or immaterial violation of Florida Bar Rule 4-1.5(d)); *Wright v. Ford Motor Co.*, 982 F. Supp. 2d 1292 (M.D. Fla. 2013); *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 368 F. Supp. 2d 1296 (S.D. Fla. 2005) (finding contingent fee agreement was enforceable despite technical or immaterial violations of Florida Bar Rules). The same result is warranted here.

In short, WT's arbitration provision more than satisfies the substantive purpose of Rule 4-1.5(i). It warned the client. It advised consultation. It was clearly disclosed. And it was knowingly accepted by a seasoned attorney-client. And for good reason: confidential arbitration allows the parties' dispute to be resolved without the necessity of publicly disclosing information that could end up harming TDI.

## V.     CONCLUSION

TDI's claims are a transparent attempt to "raise the stakes" of a simple fee dispute that always belonged in arbitration in the hopes that WT would prefer to take a haircut on their already nominal bills instead of litigating issues of arbitrability. TDI's ill-conceived bully tactics did not work. And now TDI places the Court in a needlessly difficult position by inviting it to commit reversible error by declining to compel arbitration in the face of an unmistakable delegation clause. Worse still, TDI extends that invitation in a dispute between lawyers who admittedly agreed to that clause, admittedly agreed to arbitration, and would be best served by that non-public forum.

The Court should reject TDI's arguments, dismiss the case, and compel arbitration under binding U.S. Supreme Court authority.

Dated July 22, 2025                     Respectfully submitted,


                            By:   */s/ Matthew A. Keilson*
                                  Ryan D. Watstein, FBN 93945
                                  Matthew A. Keilson, FBN 1002294
                                  WATSTEIN TEREPKA, LLP
                                  75 14th Street NE, Suite 2600
                                  Atlanta, Georgia 30309
                                  Phone:  (404) 782-0695
                                  Email:  mkeilson@wtlaw.com
                                  Email:  ryan@wtlaw.com

                                  *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 22, 2025, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using the Court's electronic filing system, which will serve all counsel of record.

/s/ Matthew A. Keilson
Matthew A. Keilson

16

# EXHIBIT 1

# Filed Under Provisional Seal

# EXHIBIT 2

# Filed Under Provisional Seal

# EXHIBIT 3

# Filed Under Provisional Seal

# EXHIBIT 4

# Filed Under Provisional Seal

# EXHIBIT 5

# Filed Under Provisional Seal

# EXHIBIT 6

**Tuesday, July 22, 2025 at 10:24:59 Eastern Daylight Time**

---

**Subject:** RE: Watstein Terepka LLP v. Timeshares Direct, Inc. - Demand for Arbitration
**Date:** Friday, July 18, 2025 at 7:19:01 PM Eastern Daylight Time
**From:** Jeremy L. Kahn
**To:** Ryan Watstein, Ashley Futrell Hinkson
**CC:** Matthew Keilson, Keith Dye, Alex Terepka

[Warning – external]

Ryan,

I have not seen any filing to stay or dismiss the arbitration. So you leave us no choice but to proceed with our motion for a temporary injunction.

Have a nice weekend.

Jeremy

**Jeremy L. Kahn**
Berman Fink Van Horn P.C.
direct: 404.261.9494 | main: 404.261.7711
Visit **BFV Website** | **Blog**

**Best Places to Work 2022-2025 | Atlanta Business Chronicle**

Licensed in Georgia, Florida, and Washington, D.C.

NOTICE: This email message and any attachments transmitted with it may contain information that is legally privileged, confidential, or otherwise protected from disclosure. If you are not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender by telephone (404.261.9494) or by email (jkahn@bfvlaw.com) and then delete this message and all copies and backups thereof. Thank you.

**From:** Ryan Watstein <Ryan@wtlaw.com>
**Sent:** Friday, July 18, 2025 7:10 PM
**To:** Jeremy L. Kahn <jkahn@bfvlaw.com>; Ashley Futrell Hinkson <afutrellhinkson@wtlaw.com>
**Cc:** Matthew Keilson <mkeilson@wtlaw.com>; Keith Dye <kdye@wtlaw.com>; Alex Terepka <Alex@wtlaw.com>
**Subject:** Re: Watstein Terepka LLP v. Timeshares Direct, Inc. - Demand for Arbitration

Jeremy,

There's a famous saying, "actions speak louder than words."

Here, we got an outstanding result for your client for a total spend of what most lawyers pay just in settlement dollars against Avi Kaufman. We saved his business, and we did so with extraordinary efficiency. (We've already talked to several experts in this area who will attest to that and more.)

He nevertheless refused to pay because he didn't want to pay us more than what the Plaintiff's

# EXHIBIT 7

RE: Watstein Terepka LLP v. Timeshares Direct, Inc. – Demand for Arbitration

Jeremy L. Kahn <jkahn@bfvlaw.com>

Friday, July 18, 2025 at 7:30 PM

**To:** ⊕ Ryan Watstein;  ⊕ Ashley Futrell Hinkson;   **Cc:**  ⊕ Matthew Keilson;  ⊕ Keith Dye;  ⊕ Alex Terepka  ⌄

[Warning – external]

Ryan – You have made multiple conflicting statements about the arbitration and your intent. So, we need judicial intervention. And there is no violation of the purported delegation clause. The arbitration agreement is void ab initio based on your firm's blatant violation of the Florida Bar rules. That is an issue for a court, not an arbitrator. I would ask that you and your firm please stop making demonstrably false statements of law to me. Thanks.

**Jeremy L. Kahn**
Berman Fink Van Horn P.C.
direct: 404.261.9494 | main: 404.261.7711
Visit BFV Website | Blog

**Best Places to Work 2022-2025 | Atlanta Business Chronicle**

Licensed in Georgia, Florida, and Washington, D.C.

NOTICE: This email message and any attachments transmitted with it may contain information that is legally privileged, confidential, or otherwise protected from disclosure. If you are not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender by telephone (404.261.9494) or by email (jkahn@bfvlaw.com) and then delete this message and all copies and backups thereof. Thank you.

## IN THE COUNTY COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, STATE OF FLORIDA

TIMESHARES DIRECT, INC.,

     Plaintiff,

vs.                                                    CASE NO. 2025-117079-CC-05

WATSTEIN TEREPKA, LLC a/k/a
WATSTEIN TEREPKA LLP,

     Defendant.

_____/

## PLAINTIFF'S MOTION FOR
## TEMPORARY INJUNCTION AND STAY OF ARBITRATION

Pursuant to Florida Rule of Civil Procedure 1.610 and Fla. Stat. § 682.03, Plaintiff Timeshares Direct, Inc. ("TDI") moves for a temporary injunction against Defendant Watstein Terepka, LLC a/k/a Watstein Terepka LLP ("Watstein") that enjoins Watstein from taking any action to enforce the illegal and void arbitration provision in the engagement agreement between the parties and that stays the pending arbitration illegally initiated by Watstein.

### INTRODUCTION

Plaintiff TDI requests an order temporarily enjoining Defendant Watstein from taking any further steps to enforce an illegal and void arbitration provision that plainly violates Rule 4-1.5(i) of the Rules Regulating the Florida Bar and staying the arbitration that Watstein initiated. TDI engaged Watstein to provide legal services in Florida. The engagement agreement contains an arbitration provision that plainly violates the Rules Regulating the Florda Bar and is therefore

1

void as against public policy. After a fee dispute arose between the parties, Watstein nevertheless threatened and then eventually filed an arbitration against TDI. Watstein should be enjoined from pursuing the illegal arbitration and the arbitration should be stayed pending a final determination on the merits in this action.

## FACTUAL BACKGROUND

On November 8, 2024, TDI executed an engagement agreement to retain Watstein to defend it in a case filed in the U.S. District Court for the Middle District of Florida. *See* Verified Compl. ¶ 6; *see also* Ex. A to Verified Compl. Watstein's founding partner, Ryan Watstein, Esq., executed the engagement agreement on behalf of Watstein. *See* Verified Compl. ¶ 8; *see also* Ex. A to Verified Compl. Mr. Watstein is an attorney licensed in Florida and regulated by the Florida Bar, and thus is subject to the Rules Regulating the Florida Bar. *See* Verified Compl. ¶ 9. Indeed, Mr. Watstein lists his and his firm's address with the Florida Bar as Watstein Terepka LLP, 218 NW 24th St Fl 3, Miami, FL 33127-4324. *Id.*

The engagement agreement contains an arbitration provision that purports to apply to any dispute between TDI and Watstein arising out of or in any way relating to the engagement agreement or any services provided by Watstein. *Id.* ¶ 11; *see also* Ex. A to Verified Compl. The engagement agreement does not contain the notice required by Rule 4-1.5(i) of the Rules Regulating the Florida Bar with respect to arbitration provisions regarding fee disputes between an attorney and client. *See* Verified Compl. ¶ 13; *see also* Ex. A to Verified Compl.

After a dispute over fees owed arose between the parties, Watstein threatened TDI that it would initiate an arbitration against it. *See* Verified Compl. ¶ 15. On June 27, 2025, through its counsel, TDI sent Watstein a letter stating that that TDI objected to any arbitration because, *inter alia*, the arbitration provision in the engagement agreement violates the Rules Regulating the Florida Bar. *Id.* ¶ 16. Three minutes later, Mr. Watstein responded by email. His email, in full, stated: "You clearly know nothing about this area. We'll send you the arbitration demand once it's filed. Have a nice weekend." *Id.* ¶ 17.

On July 8, 2025, Watstein followed through with its threat to attempt to enforce the illegal and unenforceable arbitration provision by serving TDI with an arbitration demand that Watstein filed with the American Arbitration Association. *Id.* ¶ 18; *see also* Ex. B. to Verified Compl. Although Watstein knew that TDI was represented by counsel, Watstein served TDI with the arbitration demand by serving TDI's registered agent Jeffrey Frantz in Miami, Florida by email rather than TDI's counsel. *See* Verified Compl. ¶ 20.

On July 11, 2025, TDI filed this action seeking a declaratory judgment that the arbitration provision is unenforceable and an injunction enjoining Watstein from taking any action to enforce the arbitration provision.

Watstein should be temporarily enjoined from proceeding with the arbitration because the arbitration provision clearly violates the Rules Regulating the Florida Bar is therefore void. Additionally, the arbitration should be stayed pending a final determination on the merits in this action.

3

## ARGUMENT

### I. TDI is entitled to a temporary injunction.

A court may issue a temporary injunction when the movant establishes that "(1) irreparable injury will result if the injunction is not granted, (2) there is no adequate remedy at law, (3) the party has a clear legal right to the requested relief, and (4) the public interest will be served by the temporary injunction." *ASA Coll., Inc. v. Dezer Intracoastal Mall, LLC*, 250 So. 3d 731, 733 (Fla. 3d DCA 2018) (footnote omitted) (reversing order denying temporary injunction). All four requirements are met here.[1]

### A. TDI has a clear legal right to the requested relief.

TDI has a clear legal right[2] to an injunction because the arbitration provision clearly violates Rule 4-1.5(i) of the Rules Regulating the Florida Bar. Rule 4-1.5(i) is clear:

> A lawyer must not make an agreement with a potential client prospectively providing for mandatory arbitration of fee disputes without first advising that person in writing that the potential client should consider obtaining independent legal advice as to the advisability of entering into an agreement containing such mandatory arbitration provisions. A lawyer shall not make an agreement containing such mandatory arbitration provisions unless the agreement contains the following language in bold print:
>
> **NOTICE:   This agreement contains provisions requiring arbitration of fee disputes.   Before you sign this agreement you should consider consulting**

---

[1] Other requirements apply when the temporary injunction is sought without notice. Those are inapplicable here because Plaintiff's counsel has provided Defendant with notice of this motion.

[2] The "clear legal right" requirement "is alternatively described as a substantial likelihood of prevailing on the merits." *ASA Coll.*, 250 So. 3d at 733 n.1.

**with another lawyer about the advisability of making an agreement with mandatory arbitration requirements. Arbitration proceedings are ways to resolve disputes without use of the court system. By entering into agreements that require arbitration as the way to resolve fee disputes, you give up (waive) your right to go to court to resolve those disputes by a judge or jury. These are important rights that should not be given up without careful consideration.**

When a fee agreement with a mandatory arbitration provision between an attorney and client fails to include the required notice, the arbitration provision is void and unenforceable as a matter of law. *See Labelle v. Berenson LLP*, 388 So. 3d 891, 893 (Fla. 3d DCA 2023); *Owens v. Corrigan*, 252 So. 3d 747, 750 (Fla. 4th DCA 2018). Indeed, even where the required notice is included but the attorney fails to emphasize it in bold print as Rule 4-1.5(i) requires, the arbitration provision is unenforceable as a matter of law. *See Burri L., P. A. v. Byzantine Cath. Eparchy of Phoenix*, 488 F. Supp. 3d 1185, 1192 (M.D. Fla. 2020).

Here, it cannot be disputed that the required notice is completely absent from the engagement agreement—it is not included even in regular print, let alone in bold. *See* Ex. A to Verified Compl. Accordingly, the arbitration provision is clearly void as a matter of law.

**B. TDI will suffer irreparable injury without a temporary injunction.**

"Irreparable harm is 'a material injury that continues for the remainder of the case and cannot be corrected on appeal.'" *Bd. of Cnty. Commissioners, Santa Rosa Cnty. v. Home Builders Ass'n of W. Fla., Inc.*, 325 So. 3d 981, 985 (Fla. 1st DCA 2021) (affirming issuance of temporary injunction). Here, without injunctive

5

relief, TDI will be forced to participate in an arbitration pursuant to an illegal and unenforceable arbitration provision rather than be able to defend itself in a judicial forum and before a jury as is its right. When enacting Rule 4-1.5(i), the Florida Supreme Court sought to protect clients from being forced to arbitrate fee disputes with their attorneys without being properly informed pursuant to the required notice. Once TDI is forced to participate in such a proceeding, that harm cannot be undone. Accordingly, the Court should issue a temporary injunction to prevent such irreparable injury.

### C. TDI lacks an adequate remedy at law.

TDI lacks an adequate remedy at law because damages cannot compensate TDI for participating in an arbitration when it should not be required to do so or for losing its right to defend itself in a public proceeding in a court of law, with the rights to discovery, a jury trial, and other fundamental aspects of judicial proceedings. Accordingly, this requirement is also met.

### D. A temporary injunction will serve the public interest.

A temporary injunction will serve the public interest. It is in the public interest to enforce the Rules Regulating the Florida Bar and to ensure that Florida licensed attorneys do not take advantage of their clients through practices that directly violate the Florida Bar Rules. Contrarily, it would disserve the public interest to allow an attorney to proceed with enforcing an arbitration provision that plainly violates the Florida Bar Rules. Indeed, failing to enjoin Watstein will send a message to Watstein and other attorneys that the Florida Bar Rules are optional

and need not be followed. That would hardly serve the public interest.

**E. Any bond should be nominal.**

As temporarily delaying the arbitration until a final determination on the merits of this action will not harm Watstein at all, any bond requirement should be nominal.

**II. TDI is independently entitled to a stay of the arbitration.**

Section 682.03(2), Florida Statutes provides: "On motion of a person alleging that an arbitration proceeding has been initiated or threatened but that there is no agreement to arbitrate, the court shall proceed summarily to decide the issue." Here, TDI alleges there is no valid agreement to arbitrate. Accordingly, the Court "shall proceed summarily to decide the issue." Fla. Stat. § 682.03(2). And for the reasons discussed above, the Court should hold that the arbitration provision at issue is unenforceable and stay the arbitration at least until a final determination on the merits of this action. *See, e.g.*, *Venetian Bay Constructors v. Dist. Bd. of Trs. of Edison Cmty. Coll.*, 503 So. 2d 458 (Fla. 2d DCA 1987) (affirming temporary injunction staying arbitration of a dispute until the trial court had the opportunity to rule on the merits as to whether the dispute should be the subject of arbitration).

**CONCLUSION**

WHEREFORE, the Court should enter an order (1) temporarily enjoining Defendant Watstein and its agents from taking any action to enforce, or in furtherance of, the arbitration provision in the parties' engagement agreement and (2) staying the pending arbitration until a final determination on the merits of this

action.

## CERTIFICATE OF CONFERRAL

I certify that conferral prior to filing is not required under rule 1.202.

Dated: July 22, 2025

Respectfully submitted,

/s/ Jeremy L. Kahn
Jeremy L. Kahn
Florida Bar No. 105277
jkahn@bfvlaw.com
kmoore@bfvlaw.com
Berman Fink Van Horn P.C.
3475 Piedmont Road, NE, Suite 1640
Atlanta, Georgia 30305
Telephone: 404-261-7711
Facsimile: 404-233-1943

*Counsel for Plaintiff*
*Timeshares Direct, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 22, 2025, the foregoing was electronically filed through

Florida's e-Filing Portal, which will serve a copy by email on all counsel of record.

Dated: July 22, 2025

*/s/ Jeremy L. Kahn*
Jeremy L. Kahn

**IN THE COUNTY COURT OF THE ELEVENTH JUDICIAL CIRCUIT**
**IN AND FOR MIAMI-DADE COUNTY**

TIMESHARES DIRECT, INC.,

     Plaintiff,

vs.                                CASE NO: 025-117079-CC-05

WATSTEIN TEREPKA, LLC a/k/a
WATSTEIN TEREPKA LLP.

_____/

## DECLARATION OF MATTHEW A. KEILSON

I, Matthew A. Keilson, declare and state under penalty of perjury as follows:

1.      My name is Matthew A. Keilson. I am over the age of 18 and am competent to make this declaration.

2.      I am one of the attorneys for Defendant Watstein Terepka (WT) in the above-captioned action.

3.      I have personal knowledge of the facts outlined in this declaration.

4.      Attached as **Exhibit 1** is a true and correct copy of an email from the American Arbitration Association (AAA), informing the parties that the arbitration has been stayed ("placed on hold").[1]

5.      Attached as **Exhibit 2** is a true and correct copy of an email from WT's counsel to a filing specialist for the AAA, requesting that the arbitration be stayed (held "in abeyance"). This email predates TDI's motion for a temporary restraining order, which seeks a stay of arbitration.

---

[1] Highlights in the exhibits are added for emphasis unless otherwise noted.

6.      Attached hereto as **Composite Exhibit 3** are two true and correct copies of emails between WT's counsel and TDI's counsel, in which WT offered to stay the arbitration proceedings in the AAA. This email also predates TDI's motion for a temporary restraining order, which seeks a stay of the arbitration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 30, 2025, in Atlanta, Georgia.

_/s/ Matthew A. Keilson_
Matthew A. Keilson

CASE NO. 025-117079-CC-05
DECLARATION OF MATTHEW A. KEILSON IN SUPPORT OF OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY INJUNCTION

# EXHIBIT 1

| | |
|---|---|
| **Subject:** | RE: Watstein Terepka LLP v. Timeshares Direct, Inc. - Case 01-25-0003-2221 |
| **Date:** | Wednesday, July 30, 2025 at 11:40:10 AM Eastern Daylight Time |
| **From:** | AAA Misty Smith |
| **To:** | Jeremy L. Kahn, Ashley Futrell Hinkson |
| **CC:** | Ryan Watstein, Alex Terepka, Matthew Keilson, Keron Moore |
| **Attachments:** | image943953.png, image599802.png |

[Warning – external]

Dear Parties,

Please be advised that this matter will be placed on hold pending the outcome of the motion that was filed.

The AAA can schedule a call at a later date should the parties agree to at that time.


Thank you



**AAA Misty Smith**
Case Administrator II

American Arbitration Association


E: MistySmith@adr.org
adr.org | icdr.org | aaaicdrfoundation.org
Explore the new ADR.org

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

# EXHIBIT 2

**Subject:** Watstein Terepka LLP v. Timeshares Direct, Inc. - Case 01-25-0003-2221
**Date:** Monday, July 21, 2025 at 12:56:17 PM Eastern Daylight Time
**From:** Ashley Futrell Hinkson
**To:** Kimberly Randazzo
**CC:** Jeremy L. Kahn, Ryan Watstein

Hi Ms. Randazzo,

As you know, I represent the claimant in this matter. I'm copying in the respondent's counsel. Per our discussions, AAA confirmed that this matter has not yet been formally initiated because we have not paid the remaining balance for seeking declaratory judgment. I contacted you last week to inform you that the claimant wishes to hold this arbitration in abeyance pending the resolution of the respondent's pending challenge to the arbitration provision in court. Please let us know if we need to pay the remaining balance for this matter to be held in abeyance pending the court's decision, and we will do so.

Thanks,

Ashley

**Ashley Futrell Hinkson (bio)**
WATSTEIN TEREPKA LLP
P: 404-905-9830
ahinkson@wtlaw.com
www.wtlaw.com

# COMPOSITE EXHIBIT 3

**Subject:** Re: Watstein Terepka LLP v. Timeshares Direct, Inc. - Demand for Arbitration
**Date:** Friday, July 18, 2025 at 1:30:57 PM Eastern Daylight Time
**From:** Ryan Watstein
**To:** Jeremy L. Kahn, Ashley Futrell Hinkson
**CC:** Matthew Keilson, Keith Dye, Alex Terepka

Jeremy,

We told you before you filed your frivolous lawsuit that we would agree to litigate instead of arbitrate. Instead of responding, you filed suit, including a pointless claim for declaratory relief, asking for the exact relief we agreed to provide. We will respond accordingly.

In the interim, we will agree to stay the arbitration pending the outcome of the litigation, as we suspect your client will want to be back in arbitration once he realizes the consequences of being in open court. We'll reach out to AAA about that now and ask that they stay the proceeding while this litigation plays out. That moots your bad-faith threat to move for an injunction of a proceeding intended to protect your client.

You have done your client a grave disservice, and we suggest you notify your malpractice carrier if you haven't already.

Have a nice weekend, and we look forward to litigating this matter, including against your client personally, and to recovering all our fees and punitive damages.

Best,
-Ryan

**Ryan D. Watstein (bio)**
WATSTEIN TEREPKA LLP
P: 404-782-0695
ryan@wtlaw.com
www.wtlaw.com

**Subject:** Re: Watstein Terepka LLP v. Timeshares Direct, Inc. - Demand for Arbitration
**Date:** Friday, July 18, 2025 at 7:10:18 PM Eastern Daylight Time
**From:** Ryan Watstein
**To:** Jeremy L. Kahn, Ashley Futrell Hinkson
**CC:** Matthew Keilson, Keith Dye, Alex Terepka

Jeremy,

There's a famous saying, "actions speak louder than words."

Here, we got an outstanding result for your client for a total spend of what most lawyers pay just in settlement dollars against Avi Kaufman. We saved his business, and we did so with extraordinary efficiency. (We've already talked to several experts in this area who will attest to that and more.)

He nevertheless refused to pay because he didn't want to pay us more than what the Plaintiff's lawyer made. In the process, he explained to us how he ███████████████████████ ███████████████████████████████████████████████. He bragged out about ██████ █████████████████████████████████████████████.

When this dispute arose, we tried to get on the phone with your client. He refused. We then agreed to arbitrate it in private as a courtesy to your client, so we don't have to air his dirty laundry publicly. Instead of responding to my offer to forego arbitration, you turned around and sued our firm, seeking to stop the very arbitration that we said we would forego if that's what your client wanted and despite that not being in his interests.

You did all that, apparently, to manufacture a false basis to claim your client is a "prevailing party" in the arbitration. In doing so, you put your client in yet another jam. You breached the delegation provision in the arbitration agreement. Given that, and given your bad faith attempt to manufacture a basis for a prevailing party argument, we now have no choice but to proceed to compel arbitration.

But we will, as I said below, stay the arbitration until the outcome of that motion. And in the meantime, we haven't even paid the fees necessary to move the arbitration forward, which is why neither you nor your client has received any notice from AAA of its actual initiation.

Anyway, as the above shows, the parties' actions speak for themselves. As to our words, there aren't any threats or attacks in my email. We are simply pointing out what you should have communicated to your client from the outset, and what the consequences of your and your client's choices will be.

If my tone comes across as exasperated, that's because I know we're about to spend tens to hundreds of thousands of dollars to prove a point. And I imagine you won't get paid at the end of this either, particularly not when your client gets hit with a fee award, has personal liability, and realizes how bad your advice was. You'll then likely end up withdrawing. This is all a shame.

We will get back to you about accepting service on Monday.

Have a nice weekend.

Best,
-Ryan

**Ryan D. Watstein ([bio](#))**

WATSTEIN TEREPKA ᴸᴸᴾ
P: 404-782-0695
[ryan@wtlaw.com](mailto:ryan@wtlaw.com)
[www.wtlaw.com](http://www.wtlaw.com)

**IN THE COUNTY COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY**

TIMESHARES DIRECT, INC.,

      Plaintiff,

vs.                                                      CASE NO: 025-117079-CC-05

WATSTEIN TEREPKA, LLC a/k/a
WATSTEIN TEREPKA LLP.

_____/


**DEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY INJUNCTION**

## I.       INTRODUCTION

This case is a fee dispute between Florida-based Timeshares Direct, Inc. (TDI) and its former lawyers, Georgia-based Watstein Terepka LLP (WT). After being sued in a federal putative class action under the Telephone Consumer Protection Act (TCPA) seeking millions of dollars in exposure, TDI—through its principal, Florida attorney Jeffrey Frantz—engaged WT to defend the case under a short (negotiable) engagement agreement. The parties' agreement included a clear and conspicuous arbitration clause located above the agreement's signature block—one that delegated threshold issues of arbitrability, including enforceability of the clause, to the arbitrator. And Frantz, a licensed attorney, *admits* that he read and understood the arbitration clause.

WT successfully defended TDI from the high-exposure class action it was facing, obtaining an individual (non-class) settlement that resolved the case for a fraction of the costs typical in TCPA class actions. Frantz didn't take any issue with WT's work either. Yet he still refused to pay for it. WT tried to work it out but eventually commenced an arbitration under the parties' agreement. Frantz refused to arbitrate. He instead chose to hire *another* lawyer to file this case in court, alleging (for the first time) that the arbitration clause he read and understood was unenforceable because it doesn't include the exact disclaimer language required by a Florida Bar Rule—even though it contains the substance and then some in a more conspicuous place than needed. Compl. ¶¶ 1-2, 14-15.

TDI now seeks the extraordinary remedy of a temporary injunction to enjoin the arbitration it contractually agreed to participate in. TDI's motion is misleading and meritless. TDI failed to disclose that *before* it moved for an injunction against the arbitration WT filed, WT **repeatedly offered to stay the arbitration until this Court decided its motion to compel**. Since then, the American Arbitration Association (AAA) has confirmed that it is staying the arbitration. *See* Keilson Decl. ¶ 4, Ex. 1. **In other words,**

**TDI moved for an injunction to obtain relief WT voluntarily offered and relief TDI now *already has*.** That is peak bad faith, a needless expansion of these proceedings, and a waste of this Court's resources.

Setting that aside, TDI cannot meet its burden to show any of the elements required for a temporary injunction. TDI has no likelihood of success, to start. TDI must first show that the Court can address enforceability even though the parties delegated that issue to the arbitrator. It can't do so under binding U.S. Supreme Court precedent, which makes clear that this Court has "no power to decide the arbitrability issue" in the face of a delegation clause, which is unchallenged here. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019). TDI's counsel doesn't even bring this binding authority to the Court's attention.

TDI's argument still fails even if the Court could consider enforceability. The Federal Arbitration Act (FAA), which applies to this interstate agreement, preempts "any state rule that discriminates" against arbitration by treating such agreements differently from other types of contracts. That's exactly what the Florida Bar Rule does by imposing requirements that expressly single out arbitration, like mandatory bolding and specific disclosures. Other equally binding Supreme Court precedent makes that clear as day. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 681–82 (1996) (invalidating state law that required arbitration clauses to be on the first page of agreements in underlined and capital letters as preempted under the FAA). And even if that weren't so, the arbitration provision complies with—or at a minimum, substantially satisfies—the requirements of Florida Bar Rule 4-1.5(i). It also contained all the required disclosures and more, including detailed information on how the parties would conduct arbitration. On top of all that, TDI's lawyer-principal, Frantz, admittedly read and understood it.

Nor can TDI show irreparable harm. The parties—at WT's request—already agreed to stay the arbitration pending the outcome of the motion to compel arbitration, for one, underscoring how frivolous TDI's request for a stay really is. And the AAA has stayed the arbitration per the parties' agreement. For the same reasons, TDI cannot show the absence of an adequate remedy at law, particularly because TDI can make the *exact same* arbitrability arguments to the arbitrator—someone who must have expertise in the issue, per the parties' agreement.

The balance of harms tilts sharply in WT's favor as well. TDI will suffer no cognizable harm if the arbitration proceeds (especially given the voluntary stay). By contrast, granting injunctive relief would impose real and immediate harm on WT. It would deprive WT of its bargained-for forum, force the firm to litigate in a venue it never agreed to, and undermine the parties' contractual expectations. Worse still, it would reward improper gamesmanship by a sophisticated party who knowingly agreed to arbitrate, accepted the full benefit of legal services, and then tried to escape his obligations with frivolous litigation.

Finally, the public interest does not support injunctive relief. This is a private commercial dispute between two sophisticated parties concerning a fee disagreement—nothing about it implicates public safety, welfare, or broader societal concerns. Courts have consistently held that such disputes do not justify the extraordinary remedy of a temporary injunction. And to the extent any public interest is implicated, it favors WT's position because enforcing private contracts best serves the public's interest—particularly arbitration agreements given the FAA's "national policy favoring arbitration." Undermining that policy by allowing a party to escape arbitration based on a technical challenge would only encourage gamesmanship and frustrate the efficient resolution of contractual disputes.

TDI's request for a TRO thus fails on every element. The Court should deny the motion.

## II.    RELEVANT BACKGROUND

The relevant background of this matter is detailed in WT's pending motion to compel arbitration. *See* Dkt. 11.

As a summary, this case involves a fee dispute between law firm WT and its former client, Jeffrey Frantz—a Florida attorney[1] and principal of Timeshares Direct, Inc. (TDI)—arising out of WT's successful defense of TDI in a high-stakes federal class action under the Telephone Consumer Protection Act (TCPA). *See Rantowich v. Timeshares Direct, Inc.*, No. 6:24-cv-02033 (M.D. Fla.). Frantz engaged WT, a Georgia-based law firm nationally recognized for its expertise in TCPA defense,[2] after his company was sued in a putative class action seeking millions of dollars in exposure.

When Frantz engaged Watstein, he did so under a short and negotiable agreement, which contains two clauses that delegate threshold issues of arbitrability to the arbitrator: The one contained in the AAA's Commercial Arbitration Rules,[3] which is incorporated by reference, as well as this standalone provision that conspicuously appears at the end of the agreement near the signature line:

> The Company and the Firm (collectively the "Parties") agree that any dispute arising out of or relating in any way to this Agreement or any services provided by the Firm shall be governed by Georgia law, without regard to rules governing conflicts of law, and settled by arbitration in accordance with the Commercial Arbitration Rules (the "Arbitration Rules") of the American Arbitration Association, including any dispute

---

[1] Jeffrey Wolfe Frantz, Fla. Bar Member Profile (last visited July 20, 2025), https://www.floridabar.org/directories/find-mbr/?l Name=frantz&fName=jeffrey&sdx=N&eligible= N&deceased=N&page Number= 1&pageSize=10.

[2] Watstein Terepka LLP, *Litigation: TCPA Class Actions – Georgia*, *Chambers USA Guide 2025* (visited July 20, 2025), https://chambers.com/law-firm/watstein-terepka-llp-usa-5:23524293.

[3] Am. Arb. Ass'n, Commercial Arb. Rules, R-7(a), https://www.adr.org /media/ lwanubnp/2025_commercialrules_web.pdf (last visited July 21, 2025) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability[.]").

> about arbitrability of any claim or other matter, such as the scope or
> enforceability of this arbitration

*See* Compl., Ex. A at 2. WT didn't include this arbitration provision because it unilaterally

benefited the firm. It did so to avoid having to publicly air its client's "dirty laundry" in

the event of a dispute, a fact that WT reiterated to TDI before it filed this suit.

The clause appears right above the signature block, and Frantz, an attorney himself,

explicitly referenced and confirmed his acceptance of the engagement letter via email. *Id.*;

Dkt. 11, Ex. 1. That means he necessarily read the arbitration provision *before* accepting it.

Had Frantz objected to arbitration, he could have asked WT to remove it, and WT would

have obliged—just as it's done *every* time a client asked it to.

WT then proceeded to represent TDI for almost half a year, navigating complex

class litigation and numerous public complaints about how TDI "harass[es]" people on

the do-not-call registry with "robocalls."[4] Despite these hurdles, WT successfully secured

an individual (non-class) settlement that resolved the TCPA claim and avoided potentially

millions in exposure. Throughout WT's representation, Frantz expressed his satisfaction,

complimenting WT's performance and indicating his willingness to invest further

resources to push back against what he saw as abusive TCPA litigation tactics. *See* Dkt.

11, Ex. 3.

But after the case was resolved, Frantz refused to pay the firm's fees—despite never

objecting to the quality of the work or the outcome. *See generally* Dkt. 11, Ex. 4. Instead,

he claimed the fees were too high in comparison to what opposing counsel received in

settlement. *Id.*, Ex. 4. When WT explained why that comparison was illogical—and

---

[4] BBB   Complaints—Timeshares By Owner, *BBB.org*,   available   at https: //www.bbb.org  /us/fl
/orlando/profile/timeshare-resale-and-rental-marketing/timeshares-by-owner-0733-1068821/-  complaints
?page=2  (last visited July 21, 2025) ("This company has been calling and harassing me for the last year. I
am on a Do Not Call List. Moreover I do not own a timeshare nor have I purchased anything from them.
Yet nearly every day I get robocalls and voicemail from them.").

offered to discuss the matter by phone—Frantz declined and instead threatened to hire "aggressive" counsel unless WT gave a discount. *Id.*, Ex. 5. WT declined to renegotiate its fully earned—and eminently reasonable—fees and initiated arbitration, as provided in the agreement.

Frantz then hired new counsel—Jeremy Kahn—who filed a public lawsuit, alleging for the first time that the arbitration provision Frantz *admittedly read and agreed to* was "unenforceable" because it lacked certain bolded language allegedly required by Florida Bar Rule 4-1.5(i). And Kahn did so even though this public suit would necessarily require airing his client's misdeeds.

Worse still, Kahn filed suit in the face of binding U.S. Supreme Court authority that (1) requires this Court to submit issues of arbitrability to the arbitrator given the unchallenged delegation clause in the parties' fee agreement, and (2) preempts and, thus, invalidates the Florida Bar Rule anyway. *See Henry Schein*, *Inc. v. Archer & White Sales*, *Inc.*, 586 U.S. 63, 68 (2019) (confirming that "a court may not override the contract" and has "no power to decide the arbitrability issue" when it is delegated); *see also Doctor's Association v. Casarotto*, 517 U.S. 681, 683 (1996) (preempting similar state law that discriminated against arbitration by requiring arbitration provision to appear on the first page of an agreement). WT explained all this to Kahn before he filed suit, too. He ignored it.

WT accordingly asked the arbitrator to stay the pending arbitration and moved this court to compel TDI to arbitrate for the reasons noted above, among others. *See* Keilson Decl., Exs. 2-3. Minutes after WT did so, Kahn filed his motion for a temporary injunction. In that motion, he asks the Court to stay the arbitration proceedings even though the parties had already agreed to stay the arbitration at *WT's request*. The AAA has since stayed its proceedings as well. *See* Keilson Decl., Ex. 1. Kahn also seeks to enjoin WT from pursuing arbitration pending a determination of his TRO—***failing to even mention***

binding Supreme Court authority that precludes that relief given the unmistakable (and unchallenged) delegation clauses in the parties' agreement.

WT now opposes TDI's motion for a TRO, including under the same binding precedent that compels the Court to submit this case to arbitration.

### III.    LEGAL STANDARD

A temporary injunction is an "extraordinary remedy" that must be "clear, definite, and unequivocally support the relief granted." *City of Jacksonville v. Naegele Outdoor Advert. Co.*, 634 So. 2d 750, 752 (Fla. 1st DCA 1994). To obtain a temporary injunction, Plaintiff must establish (1) a substantial likelihood of success on the merits; (2) irreparable harm in the absence of the injunction; (3) the unavailability of an adequate remedy at law; and (4) that the public interest supports the injunction. *Broward County v. Meiklejohn*, 936 So.2d 742, 746 (Fla. 4th DCA 2006) (quoting *Aerospace Welding, Inc. v. Southstream Exhaust & Welding, Inc.*, 824 So.2d 226, 228 (Fla. 4th DCA 2002)). In applying these factors, courts also consider whether the balance of harms and relative equities between the parties support the requested relief. *See Davis v. Joyner*, 409 So.2d 1193, 1196 (Fla. 4th DCA 1982).

### IV.    ARGUMENT

TDI's motion for a TRO is just another tactic to increase WT's litigation costs and bully WT into accepting less than what it's owed for successfully defending TDI in a high-exposure class action. The motion should be denied.

There is no likelihood of success on the merits, no irreparable harm, no inadequate remedy, and no public interest in rewarding a sophisticated client's effort to evade a valid contract—particularly one he expressly accepted and could have negotiated but didn't.

**A.    TDI Cannot Show a Likelihood of Success on the Merits.**

TDI cannot demonstrate a likelihood of success under any theory because it ignores controlling U.S. Supreme Court precedent—which Kahn (TDI's counsel) knowingly

failed to bring to the court's attention—and fails to address the actual language of the parties' agreement. TDI doesn't even *address*, let alone show, that the Court can even hear this dispute given the parties' agreement to delegate threshold issues of arbitrability to the arbitrator.

### 1.   Plaintiff Cannot Show That He's Likely to Overcome the Parties' Agreement to Delegate Threshold Issues to the Arbitrator.

Plaintiff has not even tried to show that he has a likelihood of success in overcoming the parties' agreement to delegate threshold issues—including the argument he raises about the arbitration agreement—to the arbitrator. Nor could he, because his argument that the arbitration requirement is void is frivolous under settled U.S. Supreme Court authority.

TDI concedes that it entered a valid contract with WT that contains an arbitration provision. MTC Arb., Ex 1 (email from TDI confirming acceptance of agreement). TDI likewise concedes that its lawyer-principal (Frantz) read and understood that arbitration provision. TDI only argues that it's entitled to a TRO because the arbitration provision is unenforceable under Florida Bar Rule 4-1.5(i)

That is contrary to settled Supreme Court authority, as explained below. But it's immaterial to Plaintiff's motion because the parties expressly delegated threshold issues of arbitrability—"such as the scope or enforceability of this arbitration provision"—to the arbitrator. *See* Compl., Ex. A. In other words, to prevail on this TRO, TDI must *first* show that the Court can address enforceability even though the parties delegated that issue to the arbitrator.

That he cannot do under binding precedent. As detailed in WT's pending motion to compel arbitration, the Court lacks authority to decide arbitrability when the parties delegate that issue to the arbitrator, as here. The U.S. Supreme Court made that crystal clear when it reversed several lower courts: **"When the parties' contract delegates the**

**arbitrability question to an arbitrator, a court may not override the contract."** *Schein, Inc.*, 586 U.S.at 68; *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (emphasis added). So have many other courts addressing similar enforceability challenges, alleging an arbitration provision is "void." *See, e.g.*, *Seminole County Tax Collector v. Domo, Inc.*, 2019 WL 1901019, at *9 (M.D. Fla. Feb. 13, 2019), *rep. and rec. adopted*, 2019 WL 1772108 (M.D. Fla. Apr. 23, 2019) (holding that the court couldn't entertain the argument that arbitration was "void][]" under Florida law given a delegation clause); *see also Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1303 (11th Cir. 2022).

Florida law is equally clear, though the Federal Arbitration Act (FAA) applies to this interstate dispute between a Florida company (TDI) and Georgia one (WT): Courts must enforce delegation provisions where the parties "clearly and unmistakably" expressed their intent to delegate arbitrability to the arbitrator, as they did here. *Angels Senior Living at Connerton Court, LLC v. Gundry*, 210 So. 3d 257, 258 (Fla. 2d DCA 2017) (citing *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1148 (11th Cir. 2015)); *see also, e.g.*, *Best v. Education Affiliates*, 82 So. 3d 143, 147 (Fla. 4th DCA 2012) (rejecting similar argument—even before *Schein*—that arbitration agreement was "invalid on its face" because the arbitration agreement "expressly delegated to the arbitrators the determination of the validity of the agreement.") (citing *Rent–A–Center*, 561 U.S. at 68–69)).

TDI doesn't even mention the fee agreement's delegation clauses, let alone show that he's likely to overcome them, as he must to obtain a TRO. That alone means the Court must deny his motion.

### 2.   The FAA Preempts the Florida Bar Rule on Which Plaintiff Relies.

Even if the Court could reach whether the arbitration provision is enforceable—it can't and thus doesn't need to reach this issue as a matter of binding precedent—the FAA preempts Florida Bar Rule 4-1.5(i) under other (equally clear) authority from the U.S.

Supreme Court. That means TDI cannot show a likelihood of success for another independent reason.

TDI insists that the arbitration clause is void because it does not reproduce the exact formatting requirements of Florida Bar Rule 4-1.5(i). But the FAA expressly preempts any state rule—express or indirect—and requires courts to place arbitration agreements "on equal footing with all contracts." *Kindred Nursing Ctrs. Ltd. P'ship v. Clark,* 581 U.S. 246, 248 (2017). And there can be no dispute that the FAA applies here because the arbitration agreement at issue is between residents of different states. *See* 9 U.S.C. §§ 1–2 (stating that FAA governs arbitration agreements involving interstate transactions); *see also Catastrophe Servs., Inc. v. Fouche*, 145 So. 3d 151, 154 (Fla. 4th DCA 2014) ("A contract between a Florida resident and a foreign corporation is an agreement evidencing a transaction involving interstate commerce") (cits. omitted).

Rule 4-1.5(i)'s requirement that arbitration provisions be bold and contain specific disclosures, verbatim, singles out and thus discriminates against arbitration. That's exactly the kind of hostility the FAA prohibits. The Supreme Court made that clear when it invalidated a similar state law that required an arbitration provision to appear on the first page of every contract. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 682 (1996) (invalidating a state law that required arbitration clauses to be on the first page of an agreement in underlined and capital letters as preempted under the FAA).

TDI doesn't address this binding precedent either. He ignores it and invites the Court to don the same blinders and commit reversible error. The Court should reject the invitation and deny the motion for this reason, too.

### 3.   WT Substantially Complied with Rule 4-1.5(i) Anyway.

TDI can't show the likelihood of success for yet another reason. WT complied with Florida Bar Rule 4-1.5(i), assuming it applied[5] and wasn't fully preempted by the FAA.

WT's short engagement letter includes a conspicuous and detailed arbitration provision on the second page—directly above the signature lines. Under Florida Bar Rule 4-1.5(i), even a bolded disclosure buried in a 100-page agreement would suffice. Compl., Ex. A at 2. WT went further, advising Frantz and TDI to "consult independent counsel" about the arbitration clause, as the Rule recommends, and explaining exactly how arbitration would proceed—making its disclosure more comprehensive than the Rule requires. *See id.*; *see also* Rule 4-1.5(i).

That's more than sufficient, and means this case resembles *Ramkelawan v. Morgan & Morgan*—where the court valued substance over form and enforced an arbitration agreement and rejected manufactured, after-the-fact arguments that the agreement did not comply with Rule 4-1.5(i). *See* 336 So. 3d 71, 75 (Fla. 3rd DCA 2021); *see also, e.g.*, *Guy Bennett Rubin, P.A. v. Guettler*, 73 So. 3d 809, 813 (Fla. 4th DCA 2011) (finding contingent fee agreement enforceable despite technical or immaterial violation of Florida Bar Rule 4-1.5(d)); *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 368 F. Supp. 2d 1296 (S.D. Fla. 2005) (finding contingent fee agreement was enforceable despite technical or immaterial violations of Florida Bar Rules).

The handful of cases TDI cites—*Labelle v. Berenson LLP*, *Owens v. Corrigan*, and *Burri Law, P.A. v. Byzantine Cath. Eparchy*—are inapposite, by contrast. The courts in *Labelle* and *Owens* invalidated arbitration clauses where the provisions didn't even advise the client to seek independent counsel. *Labelle v. Berenson LLP*, 338 So 3d 891, 892 (Fla. Dist. Ct. App.

---

[5] As noted above, the parties' agreement contains a Georgia choice of law provision, meaning the Florida Rule shouldn't apply. *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000). WT assumes without conceding the Florida Rule applies for the sake of argument, however.

2023); *Owens v. Corrigan*, 252 So. 3d 747, 750 (Fla. Dist. Ct. App. 2018). And *Burri* didn't concern any of WT's arguments, here. *Burri L., P. A. v. Byzantine Cath. Eparchy of Phoenix*, 488 F. Supp. 3d 1185, 1191 (M.D. Fla. 2020). Said another way, *none* of these cases involved a licensed attorney as the client, arbitration language that went above and beyond Florida's requirements, a delegation of arbitrability to the arbitrator, or the FAA's overriding mandate. This case involves all three.

**B.     TDI Cannot Establish Irreparable Harm or the Lack of an Adequate Remedy.**

TDI also fails to establish irreparable harm or the lack of an adequate remedy. *See Cooke v. Jones*, 2023 WL 4370445, at *2 (N.D. Fla. May 18, 2023), *rep and rec. adopted*, 2023 WL 4365913 (N.D. Fla. July 6, 2023) (treating adequate remedy and irreparable harm together because the failure to establish one typically means the failure the establish the other); *State v. Nelson*, 576 F. Supp. 3d 1017, 1039 (M.D. Fla. 2021) (treat both elements together, noting that availability of "other corrective relief" also "weighs heavily against a claim of irreparable harm") (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

For one, TDI will suffer no harm for having to participate in arbitration, as several courts have held. *See, e.g.*, *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1112 n. 20 (11th Cir. 2004) (noting that time and expenses incurred in participating in arbitration proceedings do not constitute irreparable injury). That's particularly true here because TDI and Frantz (a lawyer himself) *admittedly agreed* to arbitrate and are trying to avoid that agreement with frivolous arguments intentionally raised in the wrong forum to needlessly magnify expense.

Nor does TDI lack an adequate remedy because WT isn't even asking TDI to arbitrate the merits right now. Before TDI filed its motion, *WT* repeatedly offered to stay those proceedings until the Court decides the motion to compel arbitration, underscoring that TDI's motion is a needless and frivolous expansion of these proceedings. *See generally*

Keilson Decl. Here are just a few communications between WT and TDI's counsel confirming that:

- "In the interim, **we will agree to stay the arbitration pending the outcome of the litigation** . . . . We'll reach out to AAA about that now and ask that they stay the proceeding while this litigation plays out."

- "But we will, as I said below, **stay the arbitration until the outcome of that motion** . . . ."

*See* Ex. 3 (excerpts of emails between WT's counsel and TDI's counsel, predating TRO).[6]

On top of that, **the AAA has** *already stayed* **the arbitration proceedings**. *See* Keilson Decl., Ex. 1. TDI nevertheless wastes this Court's resources by seeking an injunction against a stayed proceeding. That's neither irreparable harm (or any harm, for that matter) nor the lack of an adequate remedy. *See, e.g.*, *Klay*, 376 F.3d at 1112; *Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 774–75 (11th Cir. 1999) (rejecting injunctive relief where the party opposing arbitration could raise its defenses in arbitration and holding that the time and expense of arbitrating did not amount to injunctive relief).

### C. The Balance of Harms Does Not Favor Injunction.

TDI must also show that its threatened "injury" outweighs any possible harm to WT. *See Sammie Investments, LLC v. Strategica Capital Associates, Inc.*, 247 So.3d 596, 599-600 (Fla. 3d DCA 2018). It fails on that front as well because TDI will suffer no harm whereas WT will suffer significantly.

As noted above, TDI had full notice of the arbitration clause, accepted it in writing (via their lawyer-principal), and only objected on an inapplicable technicality after receiving the benefit of WT's legal services. TDI can also raise *the same* enforceability challenge to the arbitrator per the fee agreements' delegation clauses.

---

[6] WT will file an unredacted copy of one page of Exhibit 3 after the Court decides the pending motion to determine the confidentiality of certain records.

WT, by contrast, will suffer real harm because a TRO would frustrate the plain terms of the parties' agreement and force WT to litigate a dispute in a jurisdiction that it never agreed to litigate in. It would likewise reward Plaintiff's (1) gamesmanship (seeking a stay *WT offered*) and (2) failure to bring binding precedent (that forecloses the very relief Plaintiff seeks) to the Court's attention. And if there weren't enough, the AAA *already agreed* to stay the proceedings. *See* Keilson Decl., Ex. 1.

The balance of harms doesn't remotely support TDI's request for a TRO under these circumstances.

### D.    The Public Interest Does Not Support an Injunction.

The public has no interest in TDI's proposed injunction either. This case doesn't involve public safety or conduct that impacts the public at large. *Cf., Mount Sinai Med. Ctr. of Greater Miami, Inc. v. City of Miami Beach*, 706 F. Supp. 1525, 1533 (S.D. Fla. 1989) (granting a temporary injunction to prevent enforcement of a city ordinance where public welfare would be harmed); *State v. Becerra*, 544 F. Supp. 3d 1241, 1304 (M.D. Fla. 2021) (granting a temporary injunction to prevent permanent harm to Florida's economy, including losses to state revenue). It's a simple contract disagreement between two private parties, which has nothing to do with the public.

And, if anything, TDI's TRO—filed to avoid paying legitimately incurred fees—*hurts* the public's interest in seeing that contracts are honored. *Cf., Tucker v. Blackfisk Marine, LLC*, 2023 WL 141980, at *2 (S.D. Fla. Jan. 10, 2023) ("The public interest will be served by the Court's enforcement of the private agreement between Plaintiff and Defendants"). That's especially true considering the FAA's "national policy favoring arbitration." *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011). TDI's argument against enforcing arbitration (and unmistakable delegation clauses) turns that interest on its head.

14

**E.   TDI Is Not Independently Entitled to a Stay Because the Default Rule in Florida Is to Allow Arbitration to Proceed Under These Circumstances.**

Nor is TDI "independently entitled to a stay of the arbitration proceedings" under Section 682.03(2). That section permits the Court to stay "judicial proceedings" but does *not* permit the court to stay the arbitration proceedings, which are already stayed here anyway.

Setting that aside, Section 682.02(4) is clear that "[i]f a party to a judicial proceeding" claims "that a controversy is not subject" to "an agreement to arbitrate, **the arbitration proceeding may continue pending final resolution of the issue by the court**, unless the court otherwise orders." There is no reason for the court to order otherwise here. The parties (and now the AAA) have *already* agreed to stay the proceedings until the Court determines WT's motion to compel arbitration. That doesn't just confirm Plaintiff's motion is frivolous but moots his request altogether.

Section § 682.02(4) doesn't apply here anyway. That law says that arbitration proceedings should generally continue even when the existence of an arbitration agreement is challenged. Here, TDI concedes it entered a contract with an arbitration agreement. TDI merely argues that the arbitration clause is unenforceable. And because the parties delegated that threshold issue to the arbitrator, as explained above, only the arbitrator can decide it under settled authority.

## V.   CONCLUSION

TDI filed a frivolous motion to obtain an injunction against arbitration proceedings the parties already agreed to stay—and are now stayed. That is a waste of this Court's resources.

On top of that, TDI's motion is contrary to settled U.S. Supreme Court and Florida law many times over. TDI's motion should be denied.

Dated July 30, 2025          Respectfully submitted,

By:  */s/ Matthew A. Keilson*
      Ryan D. Watstein, FBN 93945
      Matthew A. Keilson, FBN 1002294
      WATSTEIN TEREPKA, LLP
      75 14th St NE, Suite 2600
      Atlanta, GA 30309
      Phone:  (404) 782-0695
      Email:  mkeilson@wtlaw.com
      Email:  ryan@wtlaw.com
      *Attorneys for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

      I HEREBY CERTIFY that on July 30, 2025, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using the Court's electronic filing system, which will serve all counsel of record.

*/s/ Matthew A. Keilson*
Matthew A. Keilson
