## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

TIMESHARES DIRECT, INC.,

      Plaintiff,

vs.                                Case No. 25-23650-BLOOM/Elfenbein

WATSTEIN TEREPKA, LLC,

      Defendant.

_____/

## PLAINTIFF'S MOTION TO REMAND AND FOR ATTORNEYS' FEES

Pursuant to 28 U.S.C. § 1447(c), Plaintiff Timeshares Direct, Inc. ("TDI") moves for an order remanding this action to state court and requiring Defendant Watstein Terepka, LLC[1] ("Watstein") to pay TDI's attorneys' fees incurred as a result of Watstein's objectively unreasonable removal to federal court.

## INTRODUCTION

This case is about a law firm bullying its former client over a $25,000 fee dispute. In its latest effort to multiply and delay the proceedings, Watstein removed this action to avoid an upcoming hearing set by the state court. Watstein sought to avoid that hearing because the state court likely would have granted TDI's motion to enjoin an arbitration that Watstein filed based on an arbitration provision in its fee agreement that violates the Florida Bar's Rules of Professional Conduct. But Watstein's basis for removal is frivolous. Watstein argues that the jurisdictional amount in controversy is satisfied because its own anticipated attorneys' fee award is part of the amount in controversy. That argument flies in the face of the well-established rule that the amount in controversy is based on what *the plaintiff* seeks from the defendant, not the other way around. Because Watstein frivolously removed a $25,000 fee dispute to federal court, the Court should remand the action to state court and find that TDI is entitled to its attorneys' fees incurred as a result of Watstein's objectively unreasonable removal.

---

[1] Though it holds itself out as "Watstein Terepka LLP," Watstein is registered as "Watstein Terepka, LLC" and is not a limited liability partnership. *Watstein Terepka, LLC*, Ga. Corps. Div., https://ecorp.sos.ga.gov/businesssearch/Business Information?businessId=3911315 (last visited Sept. 2, 2025).

1

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. Watstein threatens an arbitration over a $25,000 fee dispute.

After TDI was sued in TCPA case, Watstein solicited TDI to retain Watstein to defend it. [Dkt. 1-1 ¶ 7.] TDI ultimately executed an engagement agreement to retain Watstein to defend it in that action. [*Id.* ¶ 8; Dkt. 1-1 at 17–23.] The engagement agreement contains an arbitration provision that violates Florida Rule of Professional Conduct 4-1.5(i). [Dkt. 1-1 ¶¶ 13–15; Dkt. 1-1 at 18.] After a dispute arose between TDI and Watstein over approximately $25,000 in attorneys' fees, Watstein threatened to sue TDI in an arbitration based on the unlawful arbitration clause. *See* Ex. A, Email from R. Watstein to J. Frantz (June 24, 2025).

On June 27, 2025, TDI, through counsel, sent Watstein a letter raising issues with the disputed fees, asking Watstein to cease making demands and threats on TDI, and inviting Watstein to contact TDI's counsel to discuss the matter further. *See* Ex. B, Ltr. to Watstein (June 27, 2025). TDI's counsel stated that he represents TDI and requested that all communications be directed to him. *Id.* The letter also noted that the engagement agreement's arbitration clause is unenforceable because, *inter alia*, it violates the Florida Rules of Professional Conduct. *Id.*

Within three minutes of receiving the letter, Watstein responded: "You clearly know nothing about this area. We'll send you the arbitration demand once it's filed. Have a nice weekend." Ex. C, Email from R. Watstein to J. Kahn (June 27,

---

[2] TDI recounts the facts in detail because Watstein's communications and conduct give insight into its motives for its removal and inform whether awarding fees is just. *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 138 (2005) ("Section 1447(c)

2025). This set the tone for Watstein's communications and conduct going forward.

**B. Watstein files the arbitration.**

Neither TDI nor its counsel heard from Watstein again until July 8, 2025. On July 8—despite TDI being represented and without copying TDI's counsel—Watstein emailed TDI directly a demand for arbitration that Watstein filed with the American Arbitration Association ("AAA"). Ex. D, Emails between A. Hinkson and J. Frantz (July 8–9, 2025). When TDI asked for an extension to respond to the arbitration demand, Watstein misleadingly responded that "an extension isn't necessary here, as there's no requirement to file a substantive answer in arbitration." *Id.* That was misleading because Watstein knew from TDI's June 26 letter that TDI disputed the validity of the arbitration provision and the applicable arbitration rules provide that an answer *may* be filed within 14 days and an objection to the arbitration *must* be filed in the same timeframe. *See* AAA Commercial Arbitration Rules R-5(a), R-7(c).

Once TDI's counsel learned of the arbitration, he asked Watstein for a 30-day extension to respond to the arbitration demand, including to object to the arbitration. Ex. E, Emails Between R. Watstein and J. Kahn (July 9, 2025). Watstein ignored that request and scheduled a Zoom call for the next day. *Id.*

**C. Watstein lies that it will agree to litigate in court and not arbitrate.**

After the July 10 Zoom call (during which Watstein founder Ryan Watstein, Esq. repeatedly shouted "We will never compromise!"), Watstein emailed TDI's

---

authorizes courts to award costs and fees, but only when such an award is just.").

counsel. Ex. F, Emails between A. Hinkson and J. Kahn (July 10–11, 2025). In that email, Watstein claimed that "we primarily include arbitration provisions for the *client's* benefit" so "if your client wants to litigate this dispute publicly, there is no need to file anything. We will simply agree to that, since litigating this dispute in court will be more favorable for us. Just let us know."[3] *Id.* The next day, TDI's counsel asked Watstein to confirm whether it would voluntarily dismiss the arbitration and requested a response by the end of the day on July 14. *Id.*

**D. TDI sues Watstein in county court based on its agreement to litigate.**

On July 14, after not hearing from Watstein and with the arbitration still pending—and with Watstein's last communication stating its *agreement* to litigate this dispute in court rather than arbitrate—TDI filed this action in the County Court for Miami-Dade County. [Dkt. 1-1.] TDI asserts two declaratory judgment claims. It seeks a declaration that it is not liable for further fees to Watstein. And it seeks a declaration that the arbitration clause in the engagement agreement is void and unenforceable. The latter was necessary because the arbitration was still pending and Watstein had not confirmed that it would dismiss the arbitration.

The complaint states that "the underlying amount in controversy exceeds $8,000 but *does not exceed $50,000*, exclusive of interest and costs." [Dkt. 1-1 ¶ 3] (emphasis added). TDI also filed a civil cover sheet indicating that the amount in

---

[3] This email also contains examples of Watstein's repeated oral and emailed threats that a public lawsuit over its fees would somehow invite further TCPA class actions against TDI. While Watstein was careful to not expressly say so, these statements seemed to be an implied threat that Watstein would encourage plaintiff's attorneys it knew to sue TDI, its former client.

controversy is $8,001-$30,000. [Dkt. 1-1 at 2.] After filing the lawsuit, TDI's counsel emailed Watstein courtesy copies of the complaint and civil cover sheet to advise it of the lawsuit and invite a resolution. Ex. G, Email to Watstein (July 14, 2025).

**E. Watstein walks back its agreement to litigate the dispute in court.**

On July 18, 2025—after not hearing anything from Watstein—counsel for TDI emailed Watstein asking if it would accept service of the lawsuit by email. Ex. H, Emails Between J. Kahn and R. Watstein (July 18, 2025). Counsel for TDI also noted that Watstein neither dismissed the arbitration nor responded to the prior email asking Watstein to confirm it would dismiss the arbitration. *Id.* Counsel for TDI stated that TDI would move for an injunction to enjoin and stay the arbitration unless Watstein voluntarily dismissed the arbitration consistent with its prior representation that it agreed to litigate the fee dispute in court. *Id.*

Watstein responded that the lawsuit was "frivolous" because Watstein stated "we would agree to litigate instead of arbitrate." *Id.* But going back on that very agreement—and proving the lawsuit was necessary—Watstein then stated that it would only "agree to stay the arbitration pending the outcome of the litigation." *Id.* TDI's counsel asked again if Watstein would accept service, which Watstein had not answered. *Id.* In response, Watstein stated it would "get back to you about accepting service on Monday." *Id.*

Watstein never responded about accepting service. Instead, on July 21, 2025, after engaging in improper *ex parte* communications with the AAA, Watstein copied TDI's counsel on an email to the AAA stating that it would pay the full filing fee by

July 25 "so that we can hold the arbitration open and in abeyance pending a decision from the court." Ex. I, Emails Among Counsel and AAA (July 21, 2022). And then on July 22, 2025, without any warning or conferral, Watstein filed a motion to dismiss and compel arbitration in the state-court action. [Dkt. 1-1 at 39.] In doing so, it waived service.[4] On the same day, as it was clear that Watstein lied about its agreement to litigate in court instead of arbitrate, TDI moved for a temporary injunction to enjoin and stay the arbitration. [Dkt. 1-1 at 65.]

**F. The AAA "holds" the arbitration pending state-court motions.**

On July 25, 2025, the AAA sent the parties correspondence confirming that the arbitration was initiated and noting TDI's response deadline. Ex. J, Ltr. from AAA (July 25, 2025). On July 29, 2025, Watstein emailed the AAA asking for a preliminary case management conference call. Ex. K, Emails Among Counsel and AAA (July 29–30, 2025). TDI responded that a case management conference would unnecessarily force the parties to incur further fees, and it noted that a motion to enjoin the arbitration was pending. *Id.* The AAA responded that the matter would be "placed on hold pending the outcome of the motion that was filed." *Id.*

**G. The state court sets a hearing and Watstein improperly removes.**

Meanwhile, in the state court, on July 29, 2025, the court set a hearing for

---

[4] *See* Fla. R. Civ. P. 1.140(b), (g), (h)(1). Watstein's statement in its notice of removal that "TDI never served WT a copy of the complaint" is thus disingenuous. TDI delayed formal service based on Watstein's representation that it would "get back to you about accepting service on Monday." After Watstein once again did not live up to its word, TDI engaged a process server only to then call the process server off after Watstein filed its motion to dismiss. TDI also notes that Watstein lacks a registered agent in Florida, in violation of Section 605.0113, Florida Statutes.

August 25. Ex. L, Email Notification of Hearing. But that hearing never went forward because Watstein removed this action on August 13. [Dkt. 1.] Sensing something was amiss, this Court *sua sponte* ordered Watstein to show case why this action should not be remanded for failure to satisfy the jurisdictional amount in controversy. [Dkt. 3.] Watstein responded with a frivolous argument that a *defendant's* anticipated attorneys' fee award is part of the amount in controversy. [Dkt. 5.] The Court's initial instincts were correct. Watstein's removal is improper, this case should be remanded, and Watstein should be ordered to pay TDI's attorneys' fees incurred as a result of its unreasonable removal of a $25,000 dispute.

## ARGUMENT

### A. Watstein has the burden to overcome the presumption that the Court lacks jurisdiction—with all doubts resolved in favor of remand.

As the party invoking the Court's subject-matter jurisdiction, Watstein bears the burden of establishing that the Court has subject-matter jurisdiction with sufficient allegations of jurisdictional facts. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). And because federal courts have limited jurisdiction, it is *presumed* that this Court lacks jurisdiction, and Watstein bears the burden of overcoming that presumption. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Kivisto v. Kulmala*, 497 F. App'x 905, 906 (11th Cir. 2012). "A presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts."

*Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).

The Eleventh Circuit has also held that, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *Id.*; *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; . . . removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand."); *Rietwyk v. State Farm Mut. Auto. Ins. Co.*, No. 09-cv-82433, 2010 WL 2219730, at *1 (S.D. Fla. June 2, 2010) ("The right of removal is strictly construed, as it is considered a federal infringement on a state's power to adjudicate disputes in its own courts. Thus, when the court's jurisdiction over a case is doubtful, doubts are resolved in favor of remand." (internal citations omitted)).

Watstein's only basis for removing this state-court action to federal court is diversity jurisdiction under 28 U.S.C. § 1332(a). [Dkt. 1 at 4.] For the Court to have diversity jurisdiction under § 1332(a), the parties must be citizens of different states and the amount in controversy must exceed $75,000, exclusive of interest and costs. Watstein fails to satisfy its burden to establish either jurisdictional prerequisite.

**B. Watstein fails to establish the jurisdictional amount in controversy.**

**1.    The amount in controversy is less than $75,000.**

Watstein fails to establish that the amount in controversy exceeds $75,000. TDI's complaint is clear that the amount in controversy "does not exceed $50,000."

[Dkt. 1-1 ¶ 3.] Indeed, TDI filed in *county* court, which has a $50,000 jurisdictional amount-in-controversy cap. *See* Fla. Stat. § 34.01(1)(c). Watstein also acknowledges that this dispute is over $24,982.50 in legal fees allegedly owed to it for defending TDI in a prior case. [Dkt. 1 at 1, 5.] That should end the matter.

It is well-established that the amount in controversy is based on the relief that *the plaintiff* seeks from the defendant. The Supreme Court recognized this principle over 100 years ago when it held that "the jurisdictional amount is to be tested by the value of the object *to be gained by complainant*." *Glenwood Light & Water Co. v. Mut. Light, Heat & Power Co.*, 239 U.S. 121, 125 (1915) (emphasis added). This principle is also well established in circuit precedent. *Burns*, 31 F.3d at 1095 ("Because removal is only permissible *when plaintiff's claim* could have been filed in federal court originally, *we must look to plaintiff's claim* to determine whether removal was appropriate." (emphasis added)); *Alfonso v. Hillsborough Cnty. Aviation Auth.*, 308 F.2d 724, 727 (5th Cir. 1962) ("The value to the plaintiff of the right to be enforced or protected determines the amount in controversy.").

Consistent with this well-established and basic principle, the Eleventh Circuit has expressly adopted the "plaintiff-viewpoint rule," which requires a court to measure the object of the litigation *solely from the plaintiff's perspective*— including in cases for declaratory or injunctive relief. *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 973 (11th Cir. 2002) ("The value of injunctive or declaratory relief for amount in controversy purposes is the monetary value of the object of the litigation *that would flow to the plaintiffs* if the injunction were granted." (emphasis added));

9

*Cohen v. Off. Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000) ("When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective."); *Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 219 (11th Cir. 1997) ("In our view, these cases firmly establish that this circuit has adopted the plaintiff-viewpoint rule.").

It is a removing defendant's burden to establish that the value of non-monetary relief exceeds $75,000; the plaintiff has no burden to prove the contrary, or any amount. Thus, where the value of the declaratory or injunctive relief is "immeasurable," the jurisdictional amount in controversy is not satisfied. *See Ericsson*, 120 F.3d at 221–22. Here, the value of a declaration that TDI is not liable for any further fees to Watstein is straightforward: it is the $24,982.50 in disputed fees. But the value of the declaration and injunction TDI seeks regarding the arbitration clause is too immeasurable to be included in an amount-in-controversy calculation. *Cf. Torreyes v. Godiva Chocolatier, Inc.*, 424 F. Supp. 3d 1276, 1282 (S.D. Fla. 2019) (holding that value of injunction was "too 'minimal and speculative' to sustain this Court's jurisdiction" where it was "not readily susceptible of computation"). Thus, the amount in controversy is $24,982.50.

TDI agrees that *its own* attorneys' fees incurred as of the time of removal may also be included in the amount in controversy if TDI seeks an award of attorneys' fees as part of its own claims. But Watstein fails to present any evidence of TDI's attorneys' fees, so the Court has "no basis to infer that the attorney's fees

Plaintiff accrued at the time of removal satisfy the amount in controversy requirement."[5] *MSPA Claims 1, LLC v. IDS Prop. Cas. Ins. Co.*, No. 23-CV-24265, 2024 WL 1174091, at *6 (S.D. Fla. Mar. 18, 2024) (Bloom, J.); *see also Wardak v. Goolden*, No. 24-24198-CIV, 2025 WL 868594, at *3 (S.D. Fla. Mar. 20, 2025) ("Defendant has failed to provide any evidence regarding Plaintiff's counsel's actual fees and costs to date, and the Court will not speculate as to that amount.").And TDI's *prospective* attorneys' fees are not included in the amount in controversy. *See MSPA*, 2024 WL 1174091, at *4 (Bloom, J.); *Caceres v. Scottsdale Ins. Co.*, No. 19-CV-24163, 2019 WL 10058795, at *4 (S.D. Fla. Dec. 5, 2019) (Bloom, J.).

Accordingly, the amount in controversy established by a preponderance of the evidence is no more than $24,982.50—well below the jurisdictional minimum.

**2.    Watstein's fees are not part of the amount in controversy.**

Watstein's contrary argument is not just wrong, it is frivolous. And it is not even a close call. Watstein argues that the amount in controversy includes the amount that *it as the defendant* allegedly incurred in attorneys' fees in defending this action so far and that it believes it will ultimately obtain against TDI based on a prevailing-party fee provision in its engagement agreement. But even if Watstein prevailed in this action and was entitled to an award of attorneys' fees—two highly dubious propositions—that would not create subject matter jurisdiction. As discussed above, it is well established that the amount in controversy is based solely

---

[5] While it has no obligation to disclose this information, TDI represents that its attorneys' fees when Waststein removed this action were well below the $50,017.51 necessary to bring the amount in controversy over $75,000.

on *what the plaintiff seeks*, not a defendant's anticipated recovery.

To be sure, a defendant's defenses, counterclaims, and other requests for relief are irrelevant to the amount in controversy. *See Com. Jet, Inc. v. De Havilland Invs., Ltd.*, No. 05-21196-CIV, 2005 WL 8154998, at *3 (S.D. Fla. Aug. 31, 2005); *First Guar. Bank & Tr. Co. v. Reeves*, 86 F. Supp. 2d 1147, 1153 (M.D. Fla. 2000); *Conf. Am., Inc. v. Q.E.D. Int'l, Inc.*, 50 F. Supp. 2d 1239, 1242 (M.D. Ala. 1999); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107 (1941) (holding that a plaintiff cannot remove based on a counterclaim). This is analogous to the "well-pleaded complaint" rule, under which a defendant cannot remove based on federal-question jurisdiction by asserting a federal defense to a plaintiff's state-law claim. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392–93 (1987). The overriding principle is that only the *plaintiff's* claim matters to determine removability.

Thus, when attorneys' fees are part of the amount in controversy, the defendant "must show that the attorney's fees *Plaintiff* likely accrued at the time of removal satisfy the amount in controversy requirement." *Hernandez v. Mt. Hawley Ins. Co.*, No. 23-CV-23036, 2023 WL 8445895, at *4 (S.D. Fla. Dec. 6, 2023) (Bloom, J.) (emphasis added); *see also DO Restaurants, Inc. v. Aspen Specialty Ins. Co.*, 984 F. Supp. 2d 1342, 1345 (S.D. Fla. 2013) ("When a statute authorizes the recovery of attorney's fees, and *the plaintiff has requested attorney's fees*, a reasonable amount of *those fees* is included in the amount in controversy." (emphasis added)). Watstein cites *no authority* holding that a *defendant's* fee claim may be included.

To the contrary, the few times a defendant has been bold enough to

12

frivolously argue that its own anticipated attorneys' fees award may be considered to determine the amount in controversy, courts have shot them done. *See Torreyes*, 424 F. Supp. 3d at 1284 (S.D. Fla. 2019) (noting that defendant "fails to cite even a single case—not in this Circuit and not anywhere else—that has similarly included *the Defendant*'s attorneys' fees in the amount-in-controversy calculation"); *Olympus Ins. Co. v. Bull*, No. 9:18-CV-80351, 2018 WL 3372728, at *3 (S.D. Fla. July 11, 2018) ("Defendant's anticipated statutory attorney's fees cannot be considered to determine if the case meets the amount in controversy."). As Judge Altman observed, such an argument "flies in the face of the Eleventh Circuit's well-established 'plaintiff-viewpoint rule.'" *Torreyes*, 424 F. Supp. 3d at 1284.[6]

While the law alone is clear, policy reasons further undermine Watstein's frivolous argument. Accepting Watstein's position would incentivize defendants seeking a federal forum to simply churn low-value cases until their attorneys' fees exceed the jurisdictional amount and then remove to federal court—as Watstein has apparently done here. A defendant cannot manufacture its own basis to remove and no case supports allowing such gamesmanship.

Watstein's reliance on insurance cases in its response to the Court's order to show cause at best reflects a misunderstanding of insurance "defense costs" and at worst reflects a deliberate attempt to mislead the Court. Those cases involved a

---

[6] Watstein's suggestion that the Court may consider both its and TDI's fees combined is even more absurd. *Id.* ("[N]ow that the Court has added the Plaintiff's attorneys' fees to the amount-in-controversy pot, it cannot, as a practical matter, also include the amount of the Defendant's fees. After all, whatever happens in this case, only one side will prevail—and so, only one side's fees can be awarded.").

plaintiff insurer's contractual duty to indemnify or defend its insured in a different underlying case. The "defense costs" at issue were not the insured's attorneys' fees in defending the declaratory judgment action against it; they were defense or indemnification costs that the insured claimed the insurer was contractually obligated to pay on behalf of the insured in the underlying lawsuit. The plaintiff insurers were seeking declarations that they were not contractually obligated to pay *those* amounts on behalf of the insured in the underlying case. *See First Mercury Ins. Co. v. Excellent Computing Distributors, Inc.*, 648 F. App'x 861, 863 (11th Cir. 2016); *Allstate Vehicle & Prop. Ins. Co. v. Jawanda*, 728 F. Supp. 3d 1246, 1248 (N.D. Ga. 2024). None of these cases stands for the proposition that a defendant's own attorney's fees defending an action are part of the amount in controversy.

And the few cases Watstein cites that are about attorneys' fees being part of the amount in controversy all involve a *plaintiff's* claim for fees, *not the defendant's*. Indeed, these cases that Waststein cites further demonstrate that Watstein is wrong. *See, e.g.*, *Graham v. Henegar*, 640 F.2d 732, 735 (5th Cir. 1981) ("To determine whether this suit involves a claim for over $10,000, *we must look to the relief requested in the firefighters' complaint*." (emphasis added)).

Watstein has no support—*none*—for its frivolous argument that its own attorneys' fees defending this action are part of the amount in controversy. Accordingly, this case must be remanded.

### 3. Watstein presents no evidence to support its purported fees.

Even if Watstein's anticipated attorneys' fee award were relevant—it is not—

Watstein provides no evidence to support it. Watstein has the burden of proving the amount in controversy by a preponderance of the evidence. *Burns*, 31 F.3d at 1094; *see also Cohen*, 204 F.3d at 1080 n.10 ("Arguably, when the amount in controversy substantially depends on a claim for attorney fees, that claim should receive heightened scrutiny."). But all it provides are bare assertions that its attorneys' fees as of the date of removal were either "more than $65,000" [Dkt. 1 at 6] or "a minimum of $70,000" [Dkt. 5 at 3, 5]. That does not come close to satisfying its burden. Watstein provides no evidence of its hourly rates, the hours it has expended in this litigation, or their reasonableness—not to mention how it possibly amassed a staggering $70,000 in attorneys' fees in 30 days.

At the time of removal, the only legal work Watstein had done in this litigation is review a 13-page complaint, draft a 14-page motion to compel arbitration, draft a 15-page response to an 8-page motion for temporary injunction, and draft a notice of removal. Watstein's highest-rate partner bills at $750 an hour. [Dkt. 1-1 at 17.]  Even assuming that highest rate for every billable hour of work in this case (an absurd assumption) and that such a rate was reasonable for this case (another absurd assumption), that would mean that Waststein billed over 93 hours in this case alone for that small amount of work over 30 days.[7] And further, Waststein would have to show *all* those billable hours were reasonable. *See Torryes*, 424 F. Supp. 3d at 1284–85.  Waststein has not—and cannot—do any of that.

---

[7] Using its highest associate hourly rate of $550, Watstein needed to bill a whopping 127 hours on just this case in 30 days, i.e., 4.2 hours per day, every day, including weekends. [Dkt. 1-1 at 17.] That is not realistic, much less reasonable. If anything,

It also appears that Watstein's calculation improperly includes attorneys' fees purportedly incurred in the unlawful arbitration it filed and for pre-suit correspondence. [Dkt. 1-2 ¶ 6] (including in its fee calculation "several filings in the underlying arbitration" including "a detailed arbitration demand" and "detailed correspondence . . . with the arbitrator").[8] But even where attorneys' fees are otherwise included, fees incurred in a related proceeding are not part of the amount in controversy. *See MSPA*, 2024 WL 1174091, at *5 (Bloom, J.); *Alac Enters., Inc. v. Geico Marine Ins. Co.*, No. 22-CV-22341, 2022 WL 3009494, at *2 (S.D. Fla. July 28, 2022) (Bloom, J.). Indeed, Watstein filed the arbitration *before* TDI filed this case. So Watstein has no valid basis to include such fees as part *this* action.

Nor could Watstein show that it has incurred *any* attorneys' fees. Watstein is defending itself in this case; it is not paying any attorney a fee to represent it. Watstein provides no explanation for how it is incurring attorneys' fees to represent itself. *See Trope v. Katz*, 902 P.2d 259, 264 (Cal. 1995) ("[T]he usual and ordinary meaning of the words 'attorney's fees,' both in legal and in general usage, is the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation. An attorney litigating in propria persona pays no such compensation."). As it represents itself, Watstein has no basis to claim attorneys' fees in this action. *See DeBose v. USF Bd. of Trs.*, 811 F. App'x 547, 556–57 (11th Cir. 2020) ("A pro se plaintiff cannot recover attorney's fees for representing herself,

---

these claimed fees further prove the overbilling practices that led to this dispute.

[8] Watstein's reference to "detailed correspondence" with an arbitrator is curious given that no arbitrator has been appointed in that proceeding.

even if she is a licensed attorney."); *Harrington v. Veritext, LLC*, No. 24-CV-22787, 2025 WL 1295045, at *4 (S.D. Fla. Jan. 9, 2025) (Elfenbein, M.J.) ("First, a pro se party is not entitled to attorney's fees, even when that party is an attorney."); *see also Trope*, 902 P.2d at 264.[9] Again, a contrary rule would incentivize Watstein to run up a wildly unreasonable bill that it is not actually paying to manufacture a large attorneys' fee award against TDI—a strategy that Watstein appears to be employing. The Court should not reward such a bullying strategy.

Accordingly, even if Watstein's purported attorneys' fees were part of the amount in controversy—a frivolous assertion itself—Watstein fails to prove that it is more likely than not that it incurred an amount of attorneys' fees that would bring the amount in controversy over $75,000.

## C. Watstein fails to establish its citizenship.

While the amount in controversy is dispositive that remand is required, Watstein also fails to plead facts establishing its citizenship. A limited liability company's citizenship is based on the citizenship of its members. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1021–22 (11th Cir. 2004). Watstein appears to attempt to satisfy this requirement when it alleges that it "has two members, its equity partners Ryan Watstein and Alex Terepka, and both

---

[9] As *Trope* shows, the rule applies equally to pro se individual attorneys and law firms that represent themselves. *See also Fraser Trebilcock Davis & Dunlap PC v. Boyce Tr. 2350*, 870 N.W.2d 494, 498–500 (Mich. 2015) (holding no distinction between pro se attorney representing himself and law firm represented by its member attorneys); *Munger Chadwick, P.L.C. v. Farwest Dev. & Const. of the Sw., LLC*, 29 P.3d 229, 232 (Ariz. Ct. App. 2014) ("We likewise conclude it would be inequitable for a law firm to be able to obtain its fees through an arrangement that

are also residents of Georgia." [Dkt. 1 at 5.] But such allegations of *residency* do not establish *citizenship*, which is the "key fact" that must be alleged to establish diversity jurisdiction. *See Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013); *Suarez v. Holiday CVS, L.L.C.*, No. 21-CV-20966, 2022 WL 1089270, at *2 n.1 (S.D. Fla. Apr. 12, 2022) (Bloom, J.) Because Watstein fails to establish its citizenship, remand is required.

### D. Watstein's notice of removal is silent as to its citizenship at the time this action commenced.

Watstein's notice of removal is completely silent as to diversity of citizenship at the time this action commenced. All of Watstein's allegations are about the time of removal only. Every allegation of citizenship and diversity is in the present tense. [Dkt. 1 at 4–5.] But a notice of removal based on diversity jurisdiction requires allegations of citizenship *both* at the time of removal *and at the time the action commenced in state court See Roecker v. United States*, 379 F.2d 400, 407 (5th Cir. 1967); *Audi Performance & Racing, LLC v. Kasberger*, 273 F. Supp. 2d 1220, 1225 (M.D. Ala. 2003). And remand is required where, as here, a notice of removal does not allege the parties' citizenship both at the time of removal *and at the time the action commenced in state court. See Johnston v. Cracker Barrel Old Country Store, Inc.*, No. 05-14222-CIV, 2005 WL 8156152, at *2 (S.D. Fla. Nov. 30, 2005); *Winters Gov't Sec. Corp. v. Nafi Emps. Credit Union*, 449 F. Supp. 239, 242–43 (S.D. Fla. 1978); *Winters Gov't Sec. Corp. v. Cedar Point State Bank*, 446 F. Supp. 1123, 1126–27 (S.D. Fla. 1978); *Garza v. Midland Nat. Ins. Co.*, 256 F. Supp. 12, 13–14 (S.D.

---

amounts to self-representation when a sole practitioner would be unable to do so.").

Fla. 1966); *see also See Stevens v. Nichols*, 130 U.S. 230, 232 (1889). Accordingly, this action must be remanded to state court.

**E. Watstein waived its right to remove.**

Even if Watstein had properly removed this action (it did not), it waived its right to do so. "'A state court defendant may lose or waive the right to remove a case to a federal court by taking some substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal before filing a notice of removal with the federal court.'" *Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 1244, 1246 (11th Cir. 2004). "Whether the state court defendant had waived his right to remove based on 'active participation must be made on a case-by-case basis.'" *Id.*

Here, before it was served and thus before the clock started on its deadline to respond to the complaint, Watstein filed a motion to compel arbitration in the state-court action. That filing was a substantial defensive action that indicated a willingness to litigate in state court before Watstein filed its notice of removal. Watstein also delayed removing until almost a month after it filed its motion to compel arbitration and after the Court set the case for a hearing. Even more, again without any deadline, Watstein filed in state court a response to TDI's motion for a temporary injunction. Accordingly, Watstein waived any right it had to remove.

**F. The Court should find that Watstein's removal was objectively unreasonable and that TDI is entitled to its attorneys' fees.**

Where, as here, there is no objectively reasonable basis for removal, a plaintiff seeking remand is entitled to its attorneys' fees and costs incurred as a

result of the improper removal. *See* 28 U.S.C. § 1447(c); *Martin*, 546 U.S. at 141. The purpose of this rule is to "reduce[] the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff." *Martin*, 546 U.S. at 140; *see also id.* (recognizing that "[t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources").

Here, there was no objectively reasonable basis for removal. The face of the complaint (and its filing in *county* court) made clear that the amount in controversy does not exceed $50,000, exclusive of interest and costs." [Dkt. 1-1 ¶ 3.] And Watstein never had a reasonable basis to remove this $25,000 fee dispute. Its argument that its own manufactured claim for attorneys' fees increases the amount in controversy is not just objectively unreasonable, it is frivolous and not supported by any authority. It goes against basic principles of jurisdiction. If there was ever a case to award fees for an improper removal, it is this one.

## CONCLUSION

The Court should remand this action[10] and find that TDI is entitled to its reasonable attorneys' fees incurred as a result of Watstein's improper removal.[11]

---

[10] TDI respectfully requests that the Court not include in its remand order language to the effect that "all pending motions are denied as moot," as TDI's pending motion for a temporary injunction would not be mooted by a remand. The proper procedure would be for the Court to leave motions pending for the state court to decide them.

[11] The Court retains jurisdiction to rule on attorneys' fees even after it remands an action to state court. *See Montgomery & Larmoyeux by Montgomery v. Philip Morris, Inc.*, 19 F. Supp. 2d 1334, 1337 (S.D. Fla. 1998). If the Court holds that Watstein's removal was objectively unreasonable, TDI will follow the procedures in Local Rule 7.3(a) regarding motions for attorneys' fees.

## CERTIFICATE OF CONFERRAL

Counsel for TDI conferred with counsel for Waststein to resolve the issues raised in this motion. Watstein opposes this motion and refused to voluntarily agree to remand this action to state court.

Dated: September 3, 2025

Respectfully submitted,

*/s/ Jeremy L. Kahn*
Jeremy L. Kahn
Florida Bar No. 105277
jkahn@bfvlaw.com
kmoore@bfvlaw.com
Berman Fink Van Horn P.C.
3475 Piedmont Road, NE, Suite 1640
Atlanta, Georgia 30305
Telephone:  404-261-7711
Facsimile:  404-233-1943

*Counsel for Plaintiff*
*Timeshares Direct, Inc.*