UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

TIMESHARES DIRECT, INC.,

    Plaintiff,

    v.

WATSTEIN TEREPKA, LLC,

    Defendant.
_____/

**Case No. 1:25-cv-23650**

## WT'S OPPOSITION TO TIMESHARES' MOTION TO REMAND

**Table of Contents**

I. INTRODUCTION ........................................................................................................1

II. BACKGROUND .........................................................................................................3

    A. Timeshares Refuses to Pay WT For Legal Services Without Justification................................................................................3

    B. Timeshares Launches a Vexatious Campaign to Divert From Its Indefensible Position........................................................................5

III. LEGAL STANDARD ..................................................................................................6

IV. ARGUMENT ...............................................................................................................7

    A. The Amount-In-Controversy Requirement Is Satisfied.................................7

        1. Timeshares Placed WT's Attorneys' Fees "In Controversy" In This Action, Bringing the Total Amount In Controversy to Well Over $75,000 .......................7

        2. Timeshares' Attorneys' Fees Independently Satisfy the Amount-In-Controversy Requirement Based on the Substantial Work It's Done, and WT's Fees Have Continued to Grow, Triply Justifying Denial of Plaintiff's Motion ......................... 12

    B. The Parties Are Diverse................................................................................ 14

    C. WT Didn't Waive Its Right To Remove...................................................... 15

    D. The Court Should Reject Timeshares' Frivolous Request for Sanctions................................................................ 16

V. CONCLUSION.......................................................................................................... 17

## I. INTRODUCTION

Timeshares expanded the amount in controversy in this case to more than $75,000 at the time of removal despite everything WT had put in place to prevent a fee dispute from becoming expensive. Having created federal jurisdiction through its own conduct, Timeshares cannot now avoid the consequences of its actions. The Court should deny Timeshares' motion to remand and grant WT's motion to compel arbitration, so the parties may efficiently resolve their dispute in arbitration as they agreed.

That's how this dispute began: a simple, private arbitration to collect unpaid legal fees incurred pursuant to a contract between Timeshares and WT. Under that contract, WT defeated a high-exposure putative class action for Timeshares for pennies on the dollar, a result with which Timeshares was elated. But Timeshares stiffed WT on its bill. Timeshares then refused to discuss the issue with WT. So WT initiated a two-page arbitration. As WT explained to Timeshares, that forum is the best place to resolve a fee dispute because it is private and Timeshares need not worry about its skeletons becoming part of the public record. Timeshares knows that, as it uses arbitration with its own consumer clients.

With no defense on the merits, Timeshares decided to hire an "aggressive lawyer" to launch a series of wasteful and time-consuming attacks. Timeshares rejected WT's offer to litigate just the fee dispute in Court (at a venue to be determined by WT). Instead, Timeshares filed a declaratory judgment action in Florida to publicly attack WT's arbitration provision. Timeshares also pursued an "emergency" TRO motion to stay arbitration proceedings that the AAA had *already stayed* at WT's request. Timeshares also filed a pointless motion to strike. And Timeshares threatened still more baseless motions, including a motion to disqualify WT's lawyers. Timeshares even sent their motions to the legal press, hoping it could embarrass WT into giving up.

Timeshares' scorched-earth tactics didn't change WT's mind, but they did change the math. By forcing WT to incur fees that are expressly recoverable under the parties' contract, Timeshares made a federal case out of the parties' simple dispute. That's because, when a plaintiff seeks a declaration that it is not liable under a contract, the amount in controversy is **what the plaintiff seeks to avoid**. *Thomson v. Gaskill*, 315 U.S. 442, 447 (1942).

Here, Timeshares filed a declaratory action to avoid contractual liability for WT's unpaid invoices and the attorneys' fees WT incurred collecting them, both contractually recoverable. Because of Timeshares' actions, that figure is now more than $175,000 (and was more than $100,000 at the time of removal). That fact is dispositive here, under controlling authority. *Hunt v. Wash. State Apple Advers. Comm'cn*, 432 U.S. 333, 347 (1977) (amount in controversy in declaratory action is value of object of the litigation). The only decision addressing this exact scenario confirms why: when plaintiff seeks a declaration that it is not liable under a contract, the amount in controversy includes the defendant's fees incurred litigating that contract, if, as here, there is a contractual fee-shifting provision. *See Cole v. Captain D's*, LLC, 2008 WL 4104577, at *2–3 (W.D.N.C. Aug. 29, 2008).

Timeshares raises several red herring cases and arguments. Timeshares cites irrelevant cases involving plaintiffs seeking damages plus fees—cases that say nothing about a plaintiff who sues to **avoid** paying **contractual** fees. Timeshares also pretends WT's fees in its collection arbitration don't count, even though those are the very proceedings Timeshares sued to enjoin and that are expressly contemplated by the contract under which WT seeks recovery. It also ignores that Georgia law applies to the parties' contract, which entitles law firms to recover their fees even when they don't hire outside counsel and regardless of whether the fees are reasonable (they are imminently so here, but that is an issue for later, as they are plainly *in controversy* for removal purposes). *See Hal Wright, Esq., P.C. v. Gentleman*, 327 Ga. App. 650, 652 (2014). In any event, Timeshares' own fees likely now independently surpass the requisite amount to satisfy diversity jurisdiction, which Timeshares concedes count toward the amount in controversy (so WT could immediately re-remove if remanded).

Timeshares' other remand arguments are equally meritless. WT has established its Georgia citizenship through undisputed evidence of domicile. That's further bolstered by the attached evidence, which shows what Timeshares already knows and what is public record: WT's owners live in Georgia, and only Georgia, where they own homes, where they live, where their children attend school, and so forth. Nor did WT waive removal. Responding to *Timeshares'* TRO and moving to compel arbitration in response to *Timeshares*' duplicative lawsuit were defensive acts, not a submission to state-court litigation. Even Timeshares' own cases confirm that conclusion.

Timeshares' motion is just its latest effort to expand the litigation to delay collection of its debt in the agreed-upon forum. The Court should deny Timeshares' motion and compel arbitration so the parties can resolve their dispute without further needless expense.

## II. BACKGROUND

### A. Timeshares Refuses to Pay WT For Legal Services Without Justification.

Late last year, Timeshares was named as a defendant in a putative Telephone Consumer Protection Act (TCPA) class action lawsuit, claiming that Timeshares blasted consumers with pre-recorded calls without their consent. *See Rantowich v. Timeshares Direct, Inc.*, No. 6:24-cv-02033 (M.D. Fla. 2024). The lawsuit sought millions and was filed by an attorney who routinely extracts huge settlements. *Id.*; *see also, e.g., Deshay et al. v. Keller Williams Realty*, No. 2022-CA-000457 (Fla. Cir. Ct. 2022) ($40M settlement in TCPA class action obtained by same attorney that sued Timeshares); *Wright, et al. v. eXp Realty, LLC*, 6:18-cv-01851-PGM (M.D. Fla. 2021) (same, $26M TCPA class settlement).

WT specializes in defending putative class actions. None of WT's hundreds of clients has ever paid a class judgment or settlement. Its three partners are ranked as Band 1 in TCPA litigation by Chambers USA, as is WT itself.[1] Federal courts have recognized WT's "extensive expertise," confirming that expertise "well supports [the firm's] rates." *See Reisman v. Ne. Power & Gas*, 2024 WL 795147 (S.D.N.Y. Feb. 26, 2024). And those rates are substantially less than what any firm with close to WT's record or expertise charges. Keilson Decl. ¶ 6.

With this background, Timeshares hired WT to defend it in the *Rantowich* class action. Its lawyer-owner, Jeff Frantz, executed an engagement letter with Georgia law and arbitration provisions. The provision is similar to the one Mr. Frantz uses and enforces against Timeshares' customers. *See Rice v. Timeshares Direct, Inc.*, Motion to Dismiss and Compel Arbitration, No. 2020-CC-007486-O (9th Jud. Cir. Orange Cnty., filed Oct. 14, 2020) ("Agreements to arbitrate are a favored means of dispute resolution."). Mr. Frantz confirmed he read and agreed to the terms, and he didn't make any proposed changes to them. WT then achieved an outstanding outcome for Timeshares, notwithstanding the highly problematic

---

[1] Watstein Terepka LLP, Litigation: TCPA Class Actions – Georgia, Chambers USA Guide 2025 (visited July 20, 2025), https://chambers.com/law-firm/watstein-terepka-llp-usa-5:23524293.

3

fact pattern,[2] for a fraction of the expense that is normally incurred in such cases. Dkt No. 1-1.

Timeshares nonetheless refused to pay WT, after it received the benefit of that work. Dkt. No. 1, at 2. Mr. Frantz's rationale in refusing to pay the outstanding legal fees was that Timeshares shouldn't have to pay more than what the plaintiff's attorney was paid. *Id.* WT explained the illogic of this to its sophisticated lawyer client:

> I think you might be misunderstanding the difference between Plaintiff's counsel's fees (which are based on a % of what they recover for their client, as determined by their agreement with the Plaintiff) and Defense counsel's fees (which are determined on an hourly basis by our agreement). They have nothing to do with each other. Here, the better job we do for you, the less the other side gets paid under a contingency arrangement, regardless of the number of hours they work. That's the way it's supposed to work. Indeed, we've had dozens of cases where our clients spend hundreds of thousands in fees to get a complete dismissal and the Plaintiff's counsel gets $0. That's the difference between an hourly arrangement (as all defense lawyers charge) and a contingency arrangement (which plaintiff's lawyers charge). They sometimes get burned and they sometimes get millions. Here, they didn't get much because we did a good job.

Keilson Decl. ¶ 13, Ex. A (June 23, 9:02 p.m.).

Timeshares persisted in its obstinate position. So, WT responded:

> [Y]ou appear to have ignored my entire explanation about the difference between the way the plaintiffs' lawyers are compensated versus how defense counsel is compensated. I will not repeat that explanation here. Feel free to actually read my e-mail below if you would like to understand this point.

*Id.* (June 24, 10:30 a.m.)

Mr. Frantz refused WT's invitation to work things out over a phone call. *Id.* And, he never responded to WT's debunking of his illogical rationale. He just reiterated his demand

---

[2] One recent BBB reviewer of Timeshares' business, for example, recently wrote: "I have received 16 calls from this company in the last 24 hours about selling a timeshare that I do not own. I am tired of telling them over and over to quit contacting me and removing me from their contact list. They absolutely do not listen to your requests." See BBB, 8/26/2025 Review of Timeshare Direct (https://www.bbb.org/us/fl/orlando/profile/timeshare-resale-and-rental-marketing/timeshares-by-owner-0733-1068821/complaints) (last visited 17 September 2025).

4

for a discount—on top of what WT had already provided—and said he would hire an "aggressive[]" lawyer to ensure he got it. *See* Dkt. No. 6, Ex. 5. Declining to be taken advantage of, WT filed a private, two-page arbitration with the AAA—per the parties' agreement, which had a simple, private, efficient and expedited method to resolve fee disputes. Compl., Ex. A.

### B. Timeshares Launches a Vexatious Campaign to Divert From Its Indefensible Position.

Rather than defend its assertion that it shouldn't have to pay more than the Plaintiff's lawyer recovered, Timeshares began a vexatious campaign to make resolution of the payment issue so painful and expensive that WT would hopefully give up. Timeshares first hired an "aggressive lawyer" who demanded that WT accept a settlement or "things would get out of hand" (their words). Dkt. No. 6, Ex. 5. Timeshares then followed through. It began by filing a duplicative declaratory action challenging WT's arbitration provision against its own interests and even though Timeshares routinely uses arbitration to resolve its own disputes. *See generally* Compl. It also sought a declaration that it has no liability for WT's fees.

Timeshares chose that path even though the parties had clearly and unmistakably delegated to the arbitrator the very questions it raised in court, forcing WT to move to compel arbitration even though Timeshares' position is frivolous. Timeshares then needlessly expanded the proceedings even further by filing a motion for a "temporary injunction" against an arbitration WT had already agreed to stay and is now stayed because of WT's request. To this point, WT counsel wrote to the arbitrator requesting a brief conference regarding the "parties' agreement **to stay all substantive proceedings** pending a ruling on the motion to compel arbitration currently before the court in the declaratory action Timeshares filed." Keilson Decl. ¶ 12, Ex. F. Timeshares is *still* pursuing that motion, even though the arbitration is stayed, even though the parties agreed in this case to stay everything except the remand motion and motion to compel arbitration, and even though the outcome of the "injunction" request is entirely dependent on the outcome of the motion to compel arbitration. Dkt. No. 24 (Timeshares' reply in support of motion for temporary injunction); Dkt. No. 16 (memorializing parties' agreement).

And that's not all Timeshares has done to run up unnecessary expenses. It filed a pointless motion to strike. Dkt. No. 10. Timeshares has also threatened multiple additional

5

frivolous motions, including a baseless "motion to disqualify" WT's lawyers from representing the firm. And because Timeshares ran to the court instead of the agreed-upon arbitration, WT had to take extra measures to ensure compliance with its duties owed to its former client (like confidentiality). Dkt. Nos. 1-1, 7. That caused still more expense, which WT took to protect Timeshares even though it hadn't paid WT and had publicly sued it in violation of their contract.

WT, in contrast, has made every effort to arbitrate the merits and get past the myriad other issues Timeshares created. It offered to move its claim to court if Timeshares preferred to divest itself of arbitration's protections. That offer was rejected when Timeshares sued in court in Florida and attacked WT's arbitration provision without even responding. WT proposed a stay of its arbitration (as explained above), so that the parties would not spend extra time litigating in more than one forum. It similarly invited Timeshares to stay the parties' deadline to file a scheduling report until the threshold pending motion to dismiss and compel arbitration. Keilson Decl. ¶ 12, Ex. F Timeshares refused, agreeing only after WT sent its briefing on the issue to Timeshares. *Id.* ¶ 10, Ex. D.

Timeshares' motion to remand is yet another attempt to litigate the litigation rather than the merits and to tie up WT's resources consistent with its scorched-earth tactics.

### III.   LEGAL STANDARD

Federal courts have diversity jurisdiction over all civil actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332. Defendants can remove an action within 30 days from when "it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). A "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84 (2014).

Where "the plaintiff has not pled a specific amount of damages," the removing defendant need only prove the amount in controversy by a preponderance of the evidence. *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001). "A removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Dudley v. Eli Lilly Co.*, 778 F.3d 909, 913 (11th Cir. 2014) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010)). "Moreover, at the jurisdictional stage,

6

'the pertinent question is what is **in controversy** in the case, **not how much the plaintiffs are ultimately likely to recover**.'" *Id.* (emphasis added). Plaintiffs' statements attempting to limit an amount to defeat removability "are afforded little, if any, weight" when they seek declaratory relief. *Mongtomery Kidney Specialists, LLP v. Physicians Choice Dialysis*, 2020 WL 570137, at *4 (M.D. Ala. Feb. 5, 2020). The court "is not bound by plaintiff's representation's regarding its claim[.]" *Garcia v. Am. Sec. Ins. Co.*, 2021 WL 5883003, at *2 (S.D. Fla. Dec. 13, 2021) (Bloom, J.) (cits. omitted). Defendants "may submit a wide range of evidence in order to satisfy the jurisdiction requirements of removal[.]" *Id.*

Federal courts "should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction." *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907); *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 766 (11th Cir. 2010) (same).

The requirements for diversity jurisdiction are satisfied here.

## IV.   ARGUMENT

### A.   The Amount-In-Controversy Requirement Is Satisfied

#### 1.   Timeshares Placed WT's Attorneys' Fees "In Controversy" In This Action, Bringing the Total Amount In Controversy to Well Over $75,000

Timeshares argues WT's attorneys' fees are not part of the amount in controversy in this lawsuit. They are, under controlling authority.

The measure of the amount in controversy in a declaratory action is the plaintiff's "object" in the litigation, meaning the "pecuniary consequences" it seeks to avoid. *Hunt v. Wash. State Apple Advers. Comm'n*, 432 U.S. 333, 347 (1977); *Thomson v. Gaskill*, 315 U.S. 442, 447 (1942); *Duderwicz v. Sweetwater Sav. Ass'n*, 595 F.2d 1008, 1014 (5th Cir. 1979). The consequences Timeshares seeks to avoid here are paying WT's fees, both those originally owed *and* those WT has incurred to recover them. *See generally Compl*. Along those lines, Timeshares asked the Court to declare that Timeshares "is not liable for further fees to Watstein." Compl. ¶ 43; Mot. at 4; Compl., Ex. B. So WT's fees are in controversy.

This is no different from other instances in which courts routinely consider the value of contractual terms sought to be avoided to determine the amount in the controversy. *See, e.g.*, *Am. Scrap Iron & Metal, LLC v. Treno Servs., LLC*, 2019 WL 7761807, at *3 (D.S.C. Jan.

7

31, 2019) (future lost profits part of amount in controversy in action to enjoin arbitration in which defendant sought to recover them); *Duderwicz*, 595 F.2d at 1014 (amount of interest *contracted to be charged* was part of the "pecuniary consequence" in the forfeiture action); *First Mercury Ins. Co. v. Excellent Computing Dists.*, 648 Fed. App'x 861 (11th Cir. 2016) (per curiam) (value in declaratory action to determine insurance contract was amount of insured-defendant's *potential* liability); *Allstate Vehicle & Prop. Ins. Co. v. Jawanda*, 728 F. Supp. 3d 1246, 1253 (N.D. Ga. 2024) (value of contractual duty to defend is part of amount in controversy); *Joe Ervin's Fitness Clubs, Inc. v. United Nat'l Ins. Co.*, 2006 WL 8431523, at *3 (S.D. Fla. Nov. 8, 2006) (same); *Montgomery Kidney*, 2020 WL 570137, at *4 (value of non-compete plaintiff filed declaratory action to avoid included value of entering deals the non-compete blocked).

*Cole v. Captain D's* is directly on point and confirms that WT's fees must be counted towards the amount in controversy. Like here, the plaintiff in *Cole* moved for remand in an action for declaratory judgment, arguing that the court couldn't consider the fees the defendant sought under their agreement. 2008 WL 4104577, at *2 (W.D.N.C. Aug. 29, 2008). The court rejected the argument and denied remand, citing binding Supreme Court authority. *Id.* (citing *Missouri State Life Insurance v. Jones*, 290 U.S. 199, 202 (1933)). The defendant's attorneys' fees were in controversy as part of the "pecuniary consequences" of the litigation. *Cole*, 2008 WL 4104577, at *3–4; *see also Gaskill*, 315 U.S. at 447; and *Duderwicz*, 595 F.2d at 1014 (measuring "pecuniary consequences"). The same result applies to Timeshares' declaratory judgment action here, particularly given that WT's fees are the direct result of Timeshares' own scorched-earth tactics.

Timeshares tries to avoid this result anyway. But it only relies on irrelevant authority in which the plaintiffs sue to *recover* fees instead of seeking a declaration they don't owe fees. That difference matters because in a declaratory judgment action, the plaintiff is the one trying to avoid liability, not impose it. The traditional roles for plaintiffs and defendants are reversed. *See Hudson Ins. Co. v. Am. Elec. Corp.*, 957 F.2d 826, 828 (11th Cir. 1992).[3] That's why an assessment of federal jurisdiction in a declaratory action often requires looking at the obligations a plaintiff is seeking to avoid paying the defendant. *See Public Serv. Comm'n v.*

---

[3] We've never heard of a plaintiff filing suit to enjoin someone from asserting, for example, a FDUTPA claim against it, but that would be the better analogy if Timeshares wants to invoke statutory fee-shifting cases.

8

*Wycoff Co.*, 344 U.S. 237, 248 (1952) (In declaratory judgment actions, "it is the character of the threatened action, and not of the defense, which will determine whether there is federal . . . jurisdiction[.]"); *see also Shands Teaching Hosp. & Clinics, Inc. v. Sec'y, U.S. Dep't of Health*, 847 Fed. Appx. 814, 815 (looking to the declaratory-defendant's claim to assess federal jurisdiction).

Counting the contractual liability for fees Timeshares seeks to avoid paying WT comports with the Eleventh Circuit's plaintiff-viewpoint rule. The distinction between plaintiff-viewpoint and defendant-viewpoint only matters when those lead to differing valuations—not when the benefit to the plaintiff equals the detriment to the defendant, as here. *See Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns*, 120 F.3d 216, 218 n.7 (11th Cir. 1997) (viewpoint only matters "in a case in which the value differed depending on the perspective from which it was measured."); *see also* Wright & Miller, Fed. Prac. & Proc. § 3708 ("In the majority of cases, the relief sought by the plaintiff . . . will be the same as the liability imposed on the defendant if the action is successful."). Here, the amount at issue is the same no matter which way you slice it. The contractual liability Timeshares is trying to avoid equals the value WT seeks to enforce (in arbitration) against Timeshares. *See also Webb v. Investacorp, Inc.*, 89 F.3d 252, 257 n.1 (5th Cir. 1996) (stating that because value to plaintiff and defendant was the same, measuring defendant's value didn't violate plaintiff-viewpoint rule).

The cases Timeshares cites for the proposition that only plaintiffs' attorneys' fees count are thus beside the point because they don't involve declaratory judgment actions seeking to avoid contractual liability under a fee-shifting provision.[4] *See Torreyes v. Godiva Chocolatier, Inc.*, 424 F. Supp. 3d 1276, 1282 (S.D. Fla. 2019) (addressing statutory FDUTPA claim with discretionary fee-shifting for reasonable award); *DO Restaurants, Inc. v. Aspen Specialty Ins. Co.*, 984 F. Supp. 2d 1342, 134 (S.D. Fla. 2013) (statutory attorneys' fees sought by plaintiff); *Olympus Ins. Co. v. Bull*, 2018 WL 3372728 (S.D. Fla. 2018) (involving statutory fee claims).

Timeshares also tries to avoid this result by arguing that the fees WT incurred in "related proceedings" are not "in controversy" in this one. But that argument, too, conflates

---

[4] Of course a plaintiff's attorneys' fees are the one at issue when it sues for affirmative relief. So the focus would be on the plaintiff's fees if this were the inverse breach of contract action, like if WT had sued Timeshares to collect its debt plus its already incurred fees—as it did in arbitration.

9

*statutory* attorney fee awards with *contractual* ones. The contract doesn't distinguish between WT's fees incurred in recovering its debt across forums, unlike the statutory fee-shifting provisions Timeshares cites. *All* fees incurred in its collection efforts are recoverable, and all such fees are sought by WT in the arbitration Timeshares tries to enjoin. Compl., Ex. B (governed by Georgia law) ("the prevailing party shall recover all attorneys' fees and costs" in action related to collection); *Hope & Assocs., Inc. v. Marvin M. Black Co.*, 205 Ga. App. 561, 563 (1992) (parties' agreement controls); *Dan J. Sheehan Co. v. McCrory Constr. Co., Inc.*, 284 Ga. App. 159, 163 (2007) (contract authorizing attorneys' fees to prevailing party includes those incurred in arbitration). Timeshares' authority on this point is irrelevant anyway. *MSPA* remanded only because there was no evidence of fees. 2024 WL 1174091, at *5 (S.D. Fla. 2024).

Timeshares commits the same conflating error when it argues that only WT's "reasonable" attorneys' fees could be in controversy. Some statutes require that, but the contract doesn't. It awards "all attorneys' fees and costs" to the prevailing party when WT collects its debt, and under Georgia law, that means "**all** attorneys' fees and costs." *See* Compl., Ex. B, at 2; *see also Eagle Jets, LLC v. Atlanta Jet, Inc.*, 347 Ga. App. 567 (2018) (trial court properly declined to consider reasonableness of attorneys' fees where contract provided the prevailing party "shall be awarded its attorney's fees incurred"); *Layfield v. S.E. Constr. Coordinators*, 229 Ga. App. 71 (1997) (rejecting reasonableness argument because fee award was specifically governed by contract).

In any event—at this early point—the only question is what's "in controversy," not what a likely recovery would be. *See SB Holdings I, LLC v. Indian Harbor Ins. Co.*, 2019 WL 5188311, at *3 (M.D. Fla. June 28, 2019) (rejecting the plaintiff's improper focus on the potential award rather than on the amount *in controversy*) (citing *Pretka*, 608 F.3d at 751 (noting that the amount-in-controversy should be determined based on the actual amount at issue, not how much the plaintiff is ultimately likely to recover)); *Peraldo v. TNOW Entertainment Grp., Inc.*, 2009 WL 10715059 (M.D.N.C. Apr. 14, 2009) (rejecting the plaintiff's argument that unlikelihood of punitive damages meant they weren't in controversy).[5] WT's fees are

---

[5] Consider that defendants commonly argue $5 million is in controversy while also arguing plaintiffs are entitled to none of it. *See, e.g., Ricard v. Starr Indemnity & Liab. Co.*, 2017 WL 714352 (M.D. La. Feb. 23, 2017) (disputing that plaintiff suffered any injury and any

10

now double what they were at the time of removal because of Timeshares' motions, further obliterating any would-be "reasonableness" deduction. Keilson Decl. ¶ 15.

In another bid to avoid the true amount in controversy, Timeshares argues—citing only out-of-jurisdiction authority—that WT can't recover its attorneys' fees at all because it represents itself. *See* Compl., Ex. A (engagement letter governed by Georgia law). But, under Georgia law, which Timeshares ignores, law firms representing themselves *can* recover attorneys' fees, under well-settled law. "When a contract for legal services contains a provision like this one, an award of attorney fees is available to a firm or attorney's self-representation in an action to collect fees owed by a client." *Hal Wright, Esq., P.C. v. Gentleman*, 327 Ga. App. 650, 652 (2014) (reversing the trial court's decision not to awards attorneys' fees to plaintiff law firm for services performed by its own attorney); *see also Abrams v. Putney*, 304 Ga. App. 626, 628-29 (2010) (evidence sufficient to support fee award to attorney for his partial handling of collection action against former client); *Vaughters v. Outlaw*, 293 Ga. App. 620, 623 (2008) (attorney who filed suit to recover attorney fees from former client was entitled to attorney fees even though she did not retain outside counsel); *Sprewell v. Thompson & Hutson*, S.C., LLC, 260 Ga. App. 312, 315 (2003) (affirming trial court's decision to award attorney fees to law firm for its own expenses in collection action).

After presenting such losing arguments, Timeshares turns to a parade of horribles. It claims that retaining jurisdiction will incentivize defendants to increase litigation costs to create federal jurisdiction. This argument fails for many reasons.

First, it is Timeshares' own scorched-earth tactics that precipitated the amount of WT's fees—not any campaign on WT's part to make the case (which it consistently maintains must be arbitrated) removable. If Timeshares hadn't filed a pointless TRO motion, for example, WT likely wouldn't have been able to remove when it did. Second, this is a highly unique situation with limited application. WT's argument is not that the defendant's attorneys' fees are always part of the amount in controversy or that they must be considered whenever a statute or a contract allows the prevailing party to recover attorneys' fees. It's just

---

entitlement to damages but submitting that the amount in controversy exceeded threshold amount); *Avila v. Northwood Hospitality LLC*, No. 2:23-cv-9598, Dkt. No. 1 (C.D. Cal. 2023) (denying plaintiff was entitled to any liability but asserting amount in controversy exceeded $5 million); *Gates v. Eagle Family Foods Grp., LLC*, No. 1:20-cv-6525 (N.D. Ill. 2020) (same).

11

that the defendant's attorneys' fees are "in controversy" *when a plaintiff sues for a determination that it's not required to pay them*. The uniqueness of that situation is underscored by Timeshares' failure to cite a single case with that fact pattern.

Third, Timeshares' problem is with the contractual fee-shifting provision itself, not to the jurisdictional consequences thereof. If Timeshares thinks prevailing-party provisions create misplaced incentives, it could have negotiated before signing the agreement, like WT's clients routinely do without pushback. Fourth, suggesting that defendants will spend excessive sums to get "rewarded" with federal jurisdiction is like worrying that everyone is going to spend hundreds of thousands of dollars to earn 2% cashback from a credit card company. That would be against their own interests. WT has grown from 6 to 25 employees in 2.5 years. It is very busy. The last thing it wants to do is waste any more time or money on this dispute.

In conclusion, WT has shown by at least a preponderance that it has satisfied the amount-in-controversy element of diversity jurisdiction. That's even clearer now in light of the attached evidence, which shows the amount in controversy at the time of removal was *even higher* than initially estimated, now that timekeepers have input all their time. *See* Keilson Decl. ¶ 4 (explaining subtotals spent on initial collection efforts; preparing arbitration demand; preparing motion to dismiss and compel arbitration; preparing response to preliminary injunction; prepare confidentiality motion; corresponding with counsel; research and strategy; etc.); ¶¶ 8–11, Ex. C–E (emails between the parties showing controversy over WT's fees); ¶ 8, Ex. B (WT's $40k total as of July 18); ¶ 11, Ex. E (WT's increased total to and demand of $100,000 by September 3).

Timeshares, by contrast, has offered nothing. *See Palm Ortho. Institute, Inc. v. Allied Ins. Co. of Am.*, 2022 WL 4006424, at *1 (S.D. Fal. Sept. 1, 2022) (denying remand where plaintiff failed to submit rebuttal evidence). Nor do Timeshares' statements in the declaratory complaint hold a candle next to WT's attorney's unrefuted, sworn evidence. Indeed, allegations "are afforded little, if any weight" when plaintiffs don't even seek damages. *Mongtomery Kidney*, 2020 WL 570137, at *4.

        2.    **Timeshares' Attorneys' Fees Independently Satisfy the Amount-In-Controversy Requirement Based on the Substantial Work It's Done, and WT's Fees Have Continued to Grow, Triply Justifying Denial of Plaintiff's Motion**

This case is also independently removable if Timeshares' own attorneys' fees exceed $50,017, as Timeshares concedes. When the complaint was filed, WT had no reason to suspect that Timeshares' attorneys' fees had exceeded that amount, given the comparatively little work it had to do. Now, however, Timeshares has:

- prepared and filed the complaint;
- filed a motion for temporary injunction;
- filed a 22-page motion to remand, with twelve exhibits,
- filed a motion to strike WT's amended motion to dismiss and compel arbitration;
- filed a response to WT's motion to dismiss and compel arbitration;
- prepared, negotiated, and filed a joint report and proposed scheduling order;
- filed a reply in support of its motion for temporary injunction.
- threatened various other motions and implied it already started drafting them, including a motion to disqualify WT's lawyers.

That (unnecessary and wasteful) work has cost Timeshares at least $50,017, given its firm's *aggregate* hourly rate *five years ago* was $628. *See In re Equifax*, Case No. 1:17-md-02800-TWT, Dkt. No. 1158-1, Ex. A (Berman Fink incurring $330,908 for 526.9 hours through June 30, 2025).

To check on this, WT asked that Timeshares provide the amount of fees it has incurred thus far. Keilson Decl. ¶ 11, Ex. E. Timeshares declined. *Id.* ¶ 13, Ex. G. That refusal is telling—particularly given Timeshares hasn't even hinted what those fees would be in any of its briefs, though that information would help the Court evaluate this issue. Regardless, if Timeshares' expenses don't already meet the requisite amount, they soon will, especially if Timeshares files the two motions Timeshares has informed WT it will wait to file until the Court decides the motion to remand. Keilson Decl. ¶ 11, Ex. E.

Instead of simply disclosing this information, Timeshares asserts (at 11) that only its fees *at the time of removal* can be considered. But as the Eleventh Circuit has stated, a "defendant who fails to meet his burden for removal at the early stages of litigation may still have recourse to the federal courts later, after a fuller record has been developed in discovery in the state court." *See Dudley*, 778 F.3d at 913 (remanding but forecasting the amount in

13

controversy may later expand to make the case removable).[6] So, if the Court were to remand upon finding WT's fees don't count (which would be wrong), WT would just re-remove tomorrow, based on Timeshares' fees.[7] The same is true for WT's fees. Even if WT hadn't incurred enough in fees at the time of removal, which it did, its fees are now more than $150k, meaning WT could re-remove immediately. Remanding in such circumstances would "force state courts to waste their resources on cases that will eventually be decided in federal court, [which] cannot be what Congress had in mind when it enacted § 1446." *Pretka*, 608 F.3d at 767. The Court should view Timeshares' motion through this prism. Retaining jurisdiction here is thus triply justified.

### B. The Parties Are Diverse.

WT has satisfied the diversity aspect of removal, too. Timeshares doesn't dispute that it is a citizen of Florida. Nor does it contend that WT is a citizen of any state other than GA. It just argues that WT's evidence that WT's members are "residents" of GA doesn't establish that they are "citizens" of GA. Such semantic hair-splitting wastes yet more time and money. It doesn't defeat WT's evidence, however.

The one case Timeshares relies on to make that argument is inapposite. After being ordered to present additional evidence of her citizenship, the defendant in *Rolling Greens* said that she lived in Georgia and that her Ohio residence was just temporary. WT's case is far more straightforward. It's owners, Watstein and Terepka, live, have families in, and own property in Georgia—and only Georgia. Watstein Decl. ¶ 4; Terepka Decl. ¶ 4. They have Georgia driver's licenses, file taxes in Georgia, and are registered to vote in Georgia. Watstein Decl. ¶ 4; Terepka Decl. ¶ 4. They have no residences outside of Georgia, temporary or otherwise. Watstein Decl. ¶ 4; Terepka Decl. ¶ 4. They intend to remain in Georgia indefinitely. Watstein Decl. ¶ 4; Terepka Decl. ¶ 4. The same has been true for nearly 20 collective years, and none of those facts changed between July 14 (date of complaint) and

---

[6] WT hasn't asked the Court to consider future attorneys' fees, given the unsettled nature of that question that the case doesn't require the Court to answer. But that's at least a reason that the principle of fixating on the time of removal should not be strictly applied here.

[7] Just like if a plaintiff were to add a federal claim post-removal, the court wouldn't need to ignore that on the theory that post-removal events don't matter. "[E]ven if removing a case was improper[,]" the plaintiff's later amendment cures any jurisdictional defect at the time of removal. *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35–36 (2025).

14

August 13 (date of notice of removal). Watstein Decl. ¶ 4–5; Terepka Decl. ¶ 4–5. All of the foregoing facts more than satisfy WT's burden to establish its citizenship. *Duff v. Beaty*, 804 F. Supp. 332 (N.D. Ga. 1992); *Garcia v. Rezi*, 2022 WL 18459846 (N.D. Ga. 2022); *McCoy v. McLeroy*, 348 F. Supp. 1034 (M.D. Ga. 1972). Timeshares' argument therefore fails.

### C. WT Didn't Waive Its Right To Remove

Timeshares' argument that WT waived removal by defending Timeshares' duplicative lawsuit must also be rejected. "In general, the right of removal is waived when the defendant seeks *affirmative* relief, recovery or an adjudication *on the merits* in the state court." *Engle v. R.J. Reynolds Tobacco Co.*, 122 F. Supp. 2d 1355, 1360 (S.D. Fla. 2000). WT did the opposite: it sought to move Timeshares' duplicative suit back to arbitration and preserve the status quo in the meantime. Such actions don't waive removal. *See Fain v. Biltmore Sec., Inc.*, 166 F.R.D. 39 (M.D. Ala. 1996) (holding that moving to compel arbitration and stay proceedings pending arbitration didn't waive removal right); *Somoano v. Ryder Sys., Inc.*, 985 F. Supp. 1476, 1477 (S.D. Fla. 1998) (holding that filing state court motion to dismiss did not waive removal right); *Haynes v. Gasoline Marketers, Inc.*, 184 F.R.D. 414, 417 (M.D. Ala. 1999) (filing state court answer same day as removal didn't waive removal); *Engle*, 122 F. Supp. 2d at 1360 (where "the defendant takes action which is defensive in nature, such as to . . . preserve the status quo in state court, such action does not manifest an intent to litigate in state court and accordingly does not waive the defendant's right to remove.").

The single case Timeshares cites in arguing WT waived its right to removal compels the opposite conclusion. In that case, the Eleventh Circuit held that filing a 12(b)(6) motion didn't waive the defendant's removal right and reversed the district court's decision to the contrary. *Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 11244, 1246 (11th Cir. 2004). So Timeshares' own authority thus shows WT didn't waive removal.

In fact, WT *couldn't* even have removed when it filed the motions Timeshares identifies because its fees didn't yet meet the amount in controversy. That's alone dispositive, as "[i]t is axiomatic that a party cannot waive a right that it does not yet have." *Mgmt. Health Sys., Inc. v. Access Therapies, Inc.*, 2010 WL 5572832 (rejecting argument that defendant waived its removal right); *see also* Keilson Decl. ¶ 14 (explaining WT's fees didn't place the amount in controversy over the jurisdictional threshold until it undertook such actions).

15

### D. The Court Should Reject Timeshares' Frivolous Request for Sanctions

Timeshares' request for attorneys' fees in bringing its motion is frivolous and should be rejected along with its motion. "[A]ttorneys' fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 126 (2005). Timeshares doesn't even try to make an argument that WT's removal was objectively unreasonable, because there is none. Nor does it cite any authority, which is also dispositive. *See Boyan v. 1st Acceptance Ins. Co.*, 2011 WL 133119595, at *7 (M.D. Fla. Dec. 23, 2011). The only point Timeshares makes in support of its sanctions request is that the complaint indicated the amount in controversy doesn't exceed $50,000. That fails to move the needle even for the remand argument and certainly doesn't support attorneys' fees. *Montgomery Kidney*, 2020 WL 570137, at *4 (complaint's self-serving anti-removal statements afforded little, if any, weight in declaratory actions). And the caselaw Timeshares cites in other parts of its motion denied fees against the removing party. *See Olympus*, 2018 WL 3372728, at *3. The Court should do the same here and deny Timeshares' fee request.

### V. CONCLUSION

Due to Plaintiff's own litigation conduct, which never should have occurred given the arbitration and delegation provisions, the amount in controversy in this declaratory relief case exceeded $75,000 at the time of removal. It's now over $150,000 without even counting Timeshares' fees, which likely render the case independently removable now (or soon will). In any event, the Court thus has diversity jurisdiction now under binding authority because the liability Timeshares seeks to avoid equals the considerably more than $75,000 WT seeks from Timeshares. The Court should reject Timeshares' continued attempts to litigate the litigation and send this case back to arbitration.

Dated: September 17, 2025.

[signature on following page]

**DAMIAN | VALORI | CULMO**

1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965

By: *s/ Peter F. Valori*
Peter F. Valori , Esq.
Florida Bar No. 004351
Brett J. Novick, Esq.
Florida Bar No. 107536
Primary Email: pvalori@dvllp.com
Primary Email: bnovick@dvcatttorneys.com
Secondary Email: rsaetae@dvllp.com

**WATSTEIN TEREPKA LLP**

Ryan D. Watstein
FBN: 93945
Matthew A. Keilson
FBN: 1002294
E. Keith Emanuel (admitted *pro hac vice*)
218 Northwest 24th Street, 3rd Floor
Miami, Florida 33127
Telephone: 404-782-0695
Facsimile: 404-418-8307

*Counsel for WT*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2025, I filed the foregoing document using the Court's CM/ECF system, which automatically notifies all counsel of record.

/s/ *Peter Valori*
Peter Valori